**ENVIRONMENTAL ENERGY PARTNERS, INC., Respondent–Appellant,**

v.

**SIEMENS BUILDING TECHNOLOGIES, INC., St. John's Regional Medical Center, and Mercy Lifecare Systems, Inc., Appellants–Respondents.**

Nos. 26521, 26702.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 2005.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 15, 2005.

Application for Transfer Denied
Dec. 20, 2005.

Mark Arnold, JoAnn T. Sandifer, Husch & Eppenberger, LLC, St. Louis, Charles B. Cowherd, Husch & Eppenberger, LLC, Springfield, for appellants/respondents.

Brian J. Rayment, Kivell, Rayment & Francis, P.C., Tulsa, OK, James Fossard, Pratt & Fossard, Springfield, for respondent/appellant.

JOHN E. PARRISH, Presiding Judge.

This is an appeal by Siemens Building Technologies, Inc., (Siemens) and St. John's Regional Medical Center and Mercy Lifecare Systems, Inc., (collectively referred to as St. John's) and a cross-appeal by Environmental Energy Partners, Inc. (EEP). The action that produced the judgment that is appealed began with a petition filed by Siemens against EEP and St. John's. The petition sought damages for work Siemens performed on property owned by St. John's pursuant to a subcontract with EEP and enforcement of a mechanic's lien on St. John's property. St. John's filed a cross-claim against EEP seeking damages for attorneys' fees and costs incurred "in defending the Mechanic's Lien Claim of Siemens."

EEP filed a cross-petition against St. John's for breach of contract seeking the balance of the contract amount that remained unpaid pursuant to its contract with St. John's. EEP later filed a four-count counterclaim against Siemens. The claims against Siemens were actions for breach of contract (Count I), interference with contract (Count II), malicious prosecution (Count III), and abuse of process (Count IV). Count I sought damages for any amount "awarded [St. John's] ... on [St. John's] cross-claim." Counts II, III, and IV each sought actual and punitive damages, attorneys' fees, and costs.

The factual background and initial stages of the procedural background of this case are stated in *Siemens Building Technologies, Inc. v. St. John's Regional Medical Center*, 124 S.W.3d 3 (Mo.App. 2004) (*Siemens I*). *Siemens I* may be reviewed for a complete statement of facts and a recitation of procedural events that occurred prior to the circumstances that produced this appeal. Facts related to issues addressed in this opinion are set forth in the discussions that follow regarding the points for determination by this appeal.

The first trial in this matter began August 15, 2000. Prior to its start, Siemens dismissed its action against St. John's for enforcement of a mechanic's lien. Siemens proceeded with its claim against EEP for breach of contract. St. John's dismissed its cross-claim against EEP. Verdict was returned in favor of Siemens on its breach of contract action against EEP, but the damages the jury assessed for breach of contract were reduced by an "offset" for liquidated damages to which the jury found EEP entitled due to late completion of work by Siemens. Judgment was rendered on November 28, 2000. The judgment states, as applicable to this appeal:

A. Cross–Claim of [St. John's] against [EEP] be and is hereby dismissed without prejudice pursuant to § 429.140, R.S.Mo.

B. [Siemens'] Amended Petition to Enforce its Mechanic's Lien as to the real estate and improvements owned by [St. John's] be and is hereby dismissed with prejudice; all claims of [Siemens'] Mechanic's Lien rights respecting Lien No. 3597 be and are hereby satisfied in all respects; and,

. . .

D. Counterclaim [Count I] of [EEP] against [Siemens] be and is hereby dismissed with prejudice; and,

E. On the claim of [Siemens] against [EEP], Judgment is granted in favor of [Siemens] and against [EEP] on [Siemens'] Amended Petition For Breach of Contract. The Jury finding respecting the off-set of [EEP] in the amount of $154,250.00 is herewith credited as an off-set to the Jury finding in favor of [Siemens] for $52,703.75 and the Court Orders that [Siemens] take nothing from [EEP] by reason of said off-set and that [EEP] take nothing from [Siemens] by reason of said off-set; [1] and,

. . .

G. Pursuant to Rule 74.01(b) the Court finds there is no just reason for delay in entering this Judgment and this Judgment is **final** and **appealable.**

The judgment was not appealed.

EEP's claim against St. John's for breach of contract and its remaining claims against Siemens (counterclaim Counts II, III, and IV) were tried before a jury at a later date. Trial began June 7, 2004. Verdicts were returned in favor of EEP on its claim against St. John's and on all its claims against Siemens as follows:

VERDICT A—EEP's action against St. John's for breach of contract: the jury found for EEP and assessed damages owed EEP, as instructed by the trial court, in the amount of $101,546.25.

VERDICT B—EEP's action against Siemens for malicious prosecution: the jury found for EEP, awarded no actual damages but awarded $3,000,000 punitive damages.

VERDICT C—EEP's action against Siemens for abuse of process: the jury found for EEP, awarded no actual damages but awarded $201,175 punitive damages.

VERDICT D—EEP's action against Siemens for interference with contracts: the jury found for EEP, awarded $26,100 actual damages and $500,000 punitive damages.

Siemens filed a motion for Judgment Notwithstanding the Verdict and Alternative Motion for Remittitur directed to the punitive damages verdicts. The trial court granted the motion in part and denied it in part. It granted the motion with respect to punitive damages awarded in Verdicts B and C. It entered judgment on counterclaims II and III, awarding EEP nothing for the reason that no actual damages were awarded. The trial court observed that it was setting aside the two punitive damages awards "only because the law

---

1. The verdict form set forth the sum of $52,703.75 as the amount owed by EEP to Siemens "[o]n the contract." It deducted an offset for liquidated damages in the amount of $154,250, thereby calculating the amount Siemens owed EEP as $101,546.25. The $154,250 represents 617 days liquidated damages ($154,250 divided by $250 per day).

appears to disallow punitive damages when no actual damages are awarded."

Judgment was entered as follows:

**It is hereby Ordered, Adjudged and Decreed,** that Judgment be entered on Verdict A in favor of EEP on its Cross–Petition against St. John's and that EEP have and recover from St. John's damages in the amount of $101,546.25, prejudgment interest thereon in the amount of $70,108.64 from August 8, 2000, through June 9, 2004, with interest at a rate of 18% per annum from June 10, 2004, on the sum of $101,546.25, and with interest at a rate of 9.0% per annum from June 10, 2004, on the sum of $70,108.64.

**It is hereby Ordered, Adjudged and Decreed,** that Judgment be entered on Verdict B in favor of Siemens on EEP's counterclaim for malicious prosecution and the [sic] EEP shall recover nothing thereon.

**It is hereby Ordered, Adjudged and Decreed,** that Judgment be entered on Verdict C in favor of Siemens on EEP's counterclaim for abuse of process and EEP shall take nothing thereon.

**It is hereby Ordered, Adjudged and Decreed,** that Judgment be entered on Verdict D in favor of EEP on its counterclaim for tortious interference against Siemens and EEP shall have and recover from Siemens the amount of $26,100.00 in actual damages, prejudgment interest in the amount of $9,009.86 from August 16, 2000, through June 9, 2004, with interest at the statutory rate per annum from that date, and $500,000.00 in punitive damages, together with post judgment interest thereon at the statutory rate per annum.

**It is hereby Ordered, Adjudged and Decreed,** that Judgment be entered in favor of EEP and against St. John's for EEP's attorneys' fees of $65,493.75 and costs of $407.00.

Dated this *9th* day of August, 2004.

The judgment is affirmed except as to attorneys' fees awarded in favor of EEP and against St. John's. The award of attorneys' fees is reversed. The case is remanded with directions that attorneys' fees be limited to those fees incurred in the part of the litigation required to collect the amount of the installment St. John's failed to pay as required by the terms of its contract with EEP; that the trial court determine the reasonable attorneys' fees attributable to the breach of contract action.

*Siemens' and St. John's Appeal, No. 26521*

Point I in No. 26521 (Siemens' Point I) argues that the trial court erred in entering judgment against Siemens for tortious interference with contract, in accordance with Verdict D, because EEP failed to establish lack of justification of Siemens in the actions Siemens took. Siemens argues it had "probable cause to file its lawsuit" against St. John's and EEP and received a favorable verdict in that action; that it used no improper means to collect the debt the lawsuit asserted it was owed. The judgment for tortious interference to which Point I is directed awarded EEP actual damages of $26,100 plus interest and punitive damages of $500,000.

Tortious interference with a contract or business expectancy requires proof of five elements: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages. *Acetylene Gas Co. v. Oliver,* 939 S.W.2d 404, 408[2] (Mo.App.1996) (citing

*Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo.banc 1993); *Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n,* 796 S.W.2d 369, 372[4] (Mo.banc 1990)). To prevail on this tort claim, a party must adduce substantial evidence supporting each and every element. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 870 (Mo. App.1995).

*Birdsong v. Bydalek,* 953 S.W.2d 103, 111 (Mo.App.1997).

The verdict-directing instruction regarding EEP's claim against Siemens for tortious interference with contract, Instruction No. 24, told the jury:

Your verdict must be for EEP and against Siemens if you believe:

First, a contract existed between EEP and St. Johns/Mercy which was not fully paid by St. John's/Mercy, and

Second, Siemens caused St. John's/Mercy not to pay the final payment to EEP under the contract with EEP, and

Third, Siemens did so intentionally and without justification or excuse, and

Fourth, EEP was thereby damaged.

In determining whether sufficient evidence supports the verdict, this court considers the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *McPherson v. David,* 805 S.W.2d 260, 263 (Mo. App.1991); *Page v. Hamilton,* 329 S.W.2d 758, 762 (Mo.1959). We consider only that which supports the verdict and disregard any contrary evidence and inferences. *Roark Motor Lodge Interval Sales Corp. v. Lindner,* 779 S.W.2d 684, 686 (Mo.App.1989). " '[A] jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict.' " *Massey–Ferguson Credit Corp. v. Black,* 764 S.W.2d 137, 145 (Mo.App.1989) (quoting *Treon v. Hayes,* 721 S.W.2d 789, 791[1] (Mo.App.

1986)). This court is only obliged to determine whether there was evidence from which such verdict could have been reached by a jury composed of reasonable men and women. *Reed v. Sale Memorial Hosp. & Clinic,* 698 S.W.2d 931, 936 (Mo.App.1985).

*Tate v. Golden Rule Ins. Co.,* 859 S.W.2d 831, 834 (Mo.App.1993).

Dan Raines testified at trial. Mr. Raines is president and sole shareholder of EEP. EEP's initial contact with St. John's occurred in either April or May of 1997. EEP's contacts with St. John's led to its becoming general contractor on an energy management project for St. John's. Siemens became a subcontractor on the project.

EEP entered into a contract with St. John's pursuant to which St. John's was to pay EEP $1,484,750 for the work that would be required. Payment of that amount was to be made in ten equal installments. The first payment was to be paid in January 1998. The last phase of the project was to be completed November 30, 1998. The last phase of the work was the part of the project Siemens was to perform.

Mr. Raines explained to the trial court and the jury the nature of the work that was required. The project included a "lighting upgrade, which was approximately ten thousand five hundred light fixtures throughout all [St. John's] buildings; a new pony boiler with new controls, digital controls for the boiler; new drives for the HVAC system; remove an incinerator from their dock area; doing the digital controls throughout the hospital and the MOB building." The tasks Raines listed were different phases of the project. In addition, EEP changed 125 boxes that monitored cold and warm air flow so that the exchange would be controlled digitally

through a computer monitor that would permit the air flow to be changed at the site of the computer. EEP, as general contractor, oversaw and managed all phases of the project.

Raines was asked what subcontractors were engaged to complete the project. He answered:

We had Trotter Electric out of Fort Smith. We had Dale's Electric out of Webb City. We had K & S Commercial, which is a sheet metal company here in town. I apologize because I can't remember who put in the pony boiler. They're just right down the street.... We had Siemens, did the HVAC. And then prior to the project even getting started there were new supply fans that were already delivered and put in prior to us even getting a first payment on the project, but we agreed to pay for those.

Siemens was responsible for approximately 40 percent of the project.

On November 30, 1998, the date for completion of the project, the only part of the work that had not been completed was the work Siemens was required to perform. The contract between EEP and Siemens provided that Siemens would receive $593,500 for the work it agreed to perform. Paragraph 2.1 of the contract provides, "No payment due subcontractor unless contractor receives payment." Mr. Raines was asked the following questions about the payment provisions in Siemens' contract and gave the following answers:

Q. Mr. Raines, what do you understand this term of the contract to provide?

A. The term of this portion of the contract was designed that if we are not paid by—all of our subcontractors understood if we—if we undertake a project with them and the customer did not pay us, that they accept performing that work at their own risk. That unless the customer pays us for that aspect of the project they're working at their own risk.

Q. Let me read from a portion of this and ask you if this is correct. About a third of the way down, I think it's the sixth line down in the paragraph beginning with "Subcontractor—" which would be Siemens, "—understands, acknowledges and agrees to expressly accept the risk that it will not be paid for work it performs, nor material it furnishes, nor will it receive retainage if the contractor is not fully paid by or receives retainage from owner for any reason whatsoever, including owner's bankruptcy or insolvency." Is that a correct reading of that provision?

A. Word for word.

Mr. Raines was asked if his understanding of the provision of the contract that had been read meant that EEP did not owe Siemens until EEP was paid by St. John's. He answered, "That's correct." He was then asked the questions that follow and gave the following answers:

Q. Down further in the paragraph, about eight lines from the bottom, it says, "Subcontractor shall cooperate fully with contractor in the negotiations and proceedings, including the delivery to contractor of all data, documents or other information that may be required by contractor." Is that a correct reading?

A. That's correct, word for word.

Q. Did you receive the data, documents or other information that you needed from Siemens to pursue final payment from St. John's?

A. No, we did not.

The contract that EEP entered into with Siemens was signed in March 1998. EEP had entered into its contract with St. John's in January 1998. The work was on

target to be completed November 30 at the time the contract with Siemens was signed. EEP had discussions with Siemens before entering into the St. John's contract. Mr. Raines explained that Siemens had picked the target completion date; that the dates selected were "[s]ubstantial completion, November 1, '98, with a Certificate of Final Completion no later than November 30th of 1998."

EEP and Siemens agreed to a "billing schedule" for the St. John's project pursuant to a letter dated April 2, 1998, sent to EEP on behalf of Siemens. The letter was signed on behalf of both companies. It states:

> Following is the billing schedule for the St. John's project. This is based on [Siemens] completing the project by November 30, 1998. Our plan is to install all of the VFD's, main control panels and 120vac wiring in the first two months. This will allow us to be very flexible on scheduling individual unit startups from May through August. We plan on October for training and punchlist [sic] items.

Following are projected billings for each month.

April, 1998 $155,000.00 less 10% Retention = $139,500.00 to be paid. VFD's, SF–1 Installation, Engineering, [sic]

May, 1998 $89,750.00 less 10% Retention = $80,775.00 to be paid. Control Panels, Electrical Installation, Sensors, Engineering, Boxes

June, 1998 $89,750.00 less 10% Retention = $80,775.00 to be paid. Control Modules, Sensors, Electrical Installation, System Startup, Boxes

July, 1998 $64,750.00 less 10% Retention = $58,275.00 to be paid. Control Modules, Sensors, Electrical Installation, System Startup

August, 1998 $64,750.00 less 10% Retention = $58,275.00 to be paid. Control Modules, Sensors, Electrical Installation, System Startup

September, 1998 $64,750.00 less 10% Retention = $58,275.00 to be paid. Control Modules, Sensors, Electrical Installation, System Startup

October, 1998 $64,750.00 less 10% Retention = $58,275.00 to be paid. System Startup, System Training, Job Closeout.

November, 1998 $59,350.00 to be paid (Retention)

Siemens continually fell behind in performing its part of the project and was the only subcontractor that failed to complete its part of the project on time.

Paragraph 2.2 of the contract provides, "Subcontractor shall properly complete and notarize pay request form and submit to EEP by the 25th of the month for work completed and materials stored during the previous 30 days." Throughout the project, Siemens failed to provide the documentation required, including backup detail that would support invoices it submitted.

EEP had weekly meetings throughout the project to discuss progress of the project. Minutes were taken of the meetings and sent to St. John's. Attendance by subcontractors was mandatory. Raines explained, "We'd go through every aspect of the project and make sure that something wasn't going to inconvenience the patients or any safety requirements that needed to be adhered to so that we didn't have any code issues with the city, as far as inspections and things of that nature." The meetings were held and updates obtained until August 10, 1998, after which Siemens provided no more updates. After that date, Siemens did not return telephone calls or communicate with EEP until the first trial that occurred in August

2000. St. John's was advised that Siemens was not responsive to EEP's inquiries.

Ken Schroer, the person in charge of St. John's plant operations, indicated to Mr. Raines that he had seen people from Siemens from time to time in the hospital but did not know if they were working on old equipment or on implementation of the current project. EEP met with Schroer, reviewed the project, and created a punch list regarding the status of Siemens' work.

EEP received a bill from Siemens for $201,000. EEP attempted to schedule a meeting with Siemens personnel. Siemens was contacted and told that St. John's was awaiting a certificate of completion before making its final payment to EEP; that St. John's had assured EEP payment would be made within ten days from the time the certificate of completion was received.

EEP's contract with Siemens provided for liquidated damages from Siemens if Siemens did not complete the project by November 30, 1998. It provided that Siemens would pay $250 per day in liquidated damages beginning December 1, 1998, until Siemens work was completed; that those damages, if any, would be deducted from Siemens' final invoice. The issue regarding liquidated damages was not addressed during the initial period following the November 30, 1998, completion date. Mr. Raines explained that what he wanted was to make St. John's, EEP's customer, happy.

Mr. Raines told the trial court and jury that after August 1998, he was never advised by Siemens regarding the status of its part of the project; that EEP, therefore, could not properly inform St. John's about the status of the work. He said he received a call from a hospital employee in January 2000 telling him that Siemens told her that the project had been completed.

Through September 1998, EEP had received nine of its ten scheduled payments from St. John's. St. John's elected to withhold the final payment to EEP until Siemens completed its work. EEP advised Siemens of the withholding of the final payment by St. John's. Siemens was "informed that based on a reasonable completion date [St. John's] had agreed to front payment to [EEP]"; that EEP would pay Siemens upon receipt of that check. Once again, Siemens provided no information regarding the status of the project. Thereafter, written request was made to Siemens for information as to when Siemens would complete its work. No information was provided.

EEP received no additional information from Siemens about the status of the project until March 1999 when EEP received a notice from Siemens of intent to file a mechanic's lien. Personnel at St. John's received a copy of the same notice and contacted Mr. Raines. Raines told the person who contacted him that fortunately St. John's was holding $148,000 that would protect it; that EEP would direct Siemens to complete the project and give EEP a completion date, otherwise EEP would terminate its agreement with Siemens and find a company that would finish the project. At St. John's request, EEP sent a copy of its subcontract with Siemens to St. John's. Mr. Raines told the St. John's representative that if Siemens threatened a mechanic's lien action, EEP would defend the hospital throughout the proceeding and that EEP intended to seek liquidated damages from Siemens up to the time the project would be completed.

On June 22, 1999, following the mechanic's lien threat by Siemens, St. John's personnel contacted Siemens and inquired if Siemens could complete the job by July 1. On July 1, 1999, Siemens filed a mechanic's lien. On July 13, 1999, Siemens filed suit

to enforce its mechanic's lien against EEP and St. John's. Siemens sought judgment in the amount of $201,178.75 against EEP and imposition of a mechanic's lien on St. John's property as security for the amount claimed. Those claims were the subject of the first trial. *See* n. 1, *supra.*

Sometime prior to January 24, 2000, St. John's attorney, Jane Obert, called Raines and told him Siemens had informed her its work was complete. On January 24, 2000, Mr. Raines sent a letter to a representative of Siemens stating that St. John's had apprised EEP that Siemens had completed the "Scope of Work" set forth in its subcontractor's agreement and requesting completion of a certificate of final completion. A form to be used for that purpose was forwarded with the letter. The letter stated that upon receipt of an original executed certificate, together with other documentation required by the subcontract agreement, EEP would arrange final payment on the subcontract with Siemens. A copy of the letter was sent to Ms. Obert with the request that the original of the certificate be executed on behalf of St. John's and returned.

Mr. Raines received a response from Ms. Obert. He explained, "I received a call from Jane Obert with regard to that letter, wanting to know if we would just let Siemens have our final payment and not pursue any liquidated damages or anything against them." Mr. Raines replied that he would discuss the matter with EEP's attorney. He later indicated that EEP would insist on the liquidated damages prescribed in the contract. EEP received no response to its request for a certificate of completion.

The first trial began August 15, 2000. Mr. Raines explained that on that morning he received a copy of a certificate of final completion in the form of a letter from St. John's dated August 8, 2000. EEP learned the morning the first trial began that St. John's and Siemens had reached a settlement. The settlement was set forth in a written agreement entitled "SETTLEMENT AGREEMENT AND RELEASE" that bore a date of August 3, 2000. The agreement included the provision that:

> The parties agree the terms and conditions of this Agreement shall be kept confidential and shall not be disclosed to anyone except by order of a court of competent jurisdiction or as compelled by valid legal process.

The terms of the settlement agreement between Siemens and St. John's included that St. John's agreed to pay the sum of $148,475 (the amount St. John's was withholding from EEP that was owed on the basis of St. John's contract with EEP). Siemens would file, "at a time selected by [Siemens'] attorneys, but no later than at the conclusion of [Siemens'] Case in Chief, a Memorandum of Voluntary Dismissal with Prejudice of [Siemens'] case against St. John's, which Memorandum shall include the full Release of the Lien." Siemens agreed to hold St. John's harmless and to defend St. John's against any claim arising out of direct payment of the settlement funds by St. John's to Siemens. Siemens argues that its actions in getting St. John's to pay the final payment that was owed EEP to Siemens were justified; that, therefore, there was not sufficient evidence on which the jury could find Siemens committed tortious interference with contract.

 The subject of justification for interfering with a business expectancy (and with contract) was addressed in *Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432 (Mo.App.1998).

Justification for interfering with another's business expectancy exists when one undertakes to protect a valid economic interest. *Community Title [Co.]*

*v. Roosevelt Federal S & L,* [796 S.W.2d 369, 372 (Mo.banc 1990)]. There is justification.when someone engages in competitive conduct. *Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737, 741 (Mo.App.1984). There is justification for interfering with another's business expectancy to avoid a substantial loss. *Gerstner Elec., Inc. v. American Ins. Co.,* 520 F.2d 790 (8th Cir.1975). [Footnote omitted.[2]]

One who has an existing economic interest in another's business affairs is privileged to interfere with a business expectancy to protect his own economic interest and is not liable for such interference if his action was one which he had a definite legal right to take without any qualification. *Community Title [v. Roosevelt Federal S & L],* 796 S.W.2d [369] at 372[8,9]; *Wigley v. Capital Bank of Southwest Missouri,* 887 S.W.2d 715, 720 (Mo.App. S.D.1994). That is, protecting one's economic interest constitutes justification for interference with a business expectancy unless one employs improper means to protect that interest. *Beelman River Terminals, Inc. v. Mercantile Bank, N.A.,* 880 S.W.2d 903, 908 (Mo.App. E.D.1994). Improper means are those which are independently wrongful notwithstanding injury caused by the interference. *Id. Central Bank of Lake of the Ozarks v. Shackleford,* 896 S.W.2d 948, 956 (Mo. App.1995). *See also Friedman v. Edward L. Bakewell, Inc.,* 654 S.W.2d 367, 369–70 (Mo.App.1983).

*Id.* at 438–39.

 *Gott* recognized that when one is justified in interfering in the business affairs of another, he or she is not liable for tortious interference with a business

expectancy or contract. For an act to be justified, however, one must have a definite legal right, without any qualification, to do what was done. *Id.; see also Community Title Co. v. Roosevelt Federal S & L,* 796 S.W.2d at 372. One is not justified in interfering with another's business affairs if the action taken was legally improper. Actions are improper if they "are independently wrongful notwithstanding injury caused by the interference." *Id.*

 EEP's contract with Siemens identified the work Siemens was to perform on the St. John's project and established the contract price of $593,500, exclusive of "[l]abor cost associated with the installation of dual duct boxes." Paragraph 2.1, entitled *"No Payments Due Subcontractor Unless Contractor Receives Payment"* provided, "All payments called for under this Agreement according to the attached payment schedule hereby incorporated into this agreement by Contractor to Subcontractor, due or alleged to be due to Subcontractor are and shall be contingent on Owner's acceptance of all work performed and materials furnished by Subcontractor and the prior receipt by Contractor of scheduled payment from Owner for Subcontractor's work and materials." Paragraph 2.1 included, among other provisions, the requirement that "Subcontractor shall cooperate fully with Contractor in the negotiations and proceedings [regarding claims for payment from the project owner], including the delivery to Contractor of all data, documents, or other information that may be required by Contractor." The agreement further provided for the manner in which requests for payment were to be submitted by Siemens to EEP. It provided for liquidated

**2.** The omitted footnote stated that in the *Gerstner* case the federal court applied Missouri law.

damages to EEP of $250 per day "for each calendar day beyond the completion date and until the Work is fully completed."

The contract between St. John's and EEP required payment to be made to EEP. The contract between Siemens and EEP provided that until EEP was paid, Siemens was not entitled to payment from EEP. The contract between Siemens and EEP further required Siemens to submit written requests for payment and certificates of completion and to cooperate with EEP in its dealings with St. John's with respect to issues regarding payment. There was sufficient evidence for the jury to find that Siemens did not comply with these requirements. Under these circumstances, Siemens' interference with the contract requirements of St. John's to make final payment to EEP was independently wrongful. Siemens' contract with EEP established that Siemens was not to be paid until EEP was paid by St. John's. By reason of the provisions of its contract with EEP, Siemens lacked the legal right to cause St. John's to divert the payment that was to be paid to EEP to Siemens. Siemens' actions in that regard were legally improper.

■■■ Contractual provisions can determine the presence, or lack of presence, of justification with respect to a claim of tortious interference with a business expectancy or contract. *Service Vending Co. v. Wal–Mart Stores, Inc.*, 93 S.W.3d 764 (Mo. App.2002); *Gerstner Electric, Inc. v. American Insurance Co.*, 520 F.2d 790 (8th Cir.1975). In both *Service Vending* and *Gerstner*, parties were vindicated in actions taken contrary to a business expectancy (*Service Vending*) and contract (*Gerstner Electric*) by reasons of express contractual provisions.

In *Service Vending*, a vendor that provided coin-operated vending machines at Wal–Mart stores sought recovery from Wal–Mart for tortious interference with its efforts to sell machines it had used at Wal–Mart locations following Wal–Mart's termination of its contract with Service Vending. Service Vending sought to sell its machines to the vendor that was replacing it. Service Vending claimed its attempts at selling the machines were unsuccessful because Wal–Mart required the machines to be removed from its premises; that Wal–Mart prevented the machines from being sold "in place." 93 S.W.3d at 767. The court determined Wal–Mart was justified in requiring that the machines be removed by reason of the terms of its contract with Service Vending, explaining:

> The parties' contract permitted Wal–Mart to terminate the agreement "at any time." Upon notice of termination being given by Wal–Mart, the contract states, "[A]ll equipment belonging to [Service Vending] shall be removed from Wal–Mart property within ten (10) days of receiving written notice."

*Id.* at 769–70.

*Service Vending* held that "Wal–Mart's insistence that there be compliance with contract terms regarding removal of equipment was justified." *Id.* at 770. The court concluded that, as a matter of law, the terms of Service Vending's contract with Wal–Mart defeated its claim of tortious interference by Wal–Mart.

In *Gerstner Electric*, a case in which Missouri law applied, a highway contractor sued a surety for wrongful interference with contract. The contractor's bond with the surety guaranteed that subcontractors would be paid in full. The surety had been notified of a subcontractor's pending claim of nonpayment. The contractor advised the surety it intended to continue to refrain from making progress payments to the subcontractor. The surety's indemnity agreement authorized a conditional assign-

ment of funds otherwise owed by the highway commission in the event the contractor failed to pay subcontractors. The surety agreement further authorized the surety to take any other action it deemed appropriate. The court held that the contract provisions in the indemnity agreement were justification for the surety to request the highway commission to withhold further payment to the contractor; that the surety's actions were not tortious interference with the contract between the contractor and the highway commission.

Here, as in *Service Vending* and *Gerstner Electric,* contractual provisions established Siemens' rights. However, unlike the circumstances in *Service Vending* and *Gerstner Electric,* the actions Siemens took were specifically contrary to the terms of its contract with EEP. Siemens lacked any right that would have permitted St. John's to divert payment to it rather than to pay EEP. Siemens was not entitled to receive payment until EEP was paid. There was sufficient evidence for the jury to conclude that Siemens' actions in causing St. John's to divert the payment to which EEP was entitled were not justified; that Siemens tortiously interfered with the contract between EEP and St. John's by requesting and encouraging St. John's to breach the payment terms of that contract. Siemens' Point I is denied.

Siemens' Point II contends the trial court erred in denying Siemens' request to remit punitive damages awarded by Verdict D in the amount of $500,000 because "there is no evidence that Siemens acted reprehensively [sic], the ratio of punitive damages to actual damages is not justified, and civil penalties for comparable conduct would not exceed EEP's attorneys' fees

incurred in responding to Siemens' lawsuit."

The jury entered three awards of punitive damages in favor of EEP and against Siemens. Verdict B awarded EEP $3,000,000 punitive damages with respect to EEP's action for malicious prosecution. Verdict C awarded $201,175 punitive damages with respect to EEP's action for abuse of process. Verdict D awarded $500,000 punitive damages on EEP's action for tortious interference with contract. Siemens' post-trial motion included a request for judgment n.o.v. with respect to punitive damages assessed by Verdicts B and C because no actual damages were awarded on the claims of EEP to which those verdicts applied. The trial court granted the motion for judgment n.o.v. with respect to the awards set forth in Verdicts B and C on that basis. Thus, the punitive damages for which judgment was entered were for the $500,000 awarded by Verdict D, the verdict that found for EEP on its claim against Siemens for tortious interference with contract.

Instruction No. 27 instructed the jury with respect to punitive damages regarding EEP's claim for tortious interference.[3] It states:

> If you find the issues in favor of EEP, and if you believe the conduct of Siemens as submitted in Instruction Number *24* was outrageous because of Siemens' evil motive or reckless indifference to the rights of others, then in addition to any damages to which you find EEP entitled under Instruction Number *26,* you may award EEP an additional amount as punitive damages in such sum as you believe will serve to punish Siemens and to deter Siemens and others from like conduct.

**3.** This court's review of the record on appeal does not reveal any objection at trial by Siemens to the instruction that submitted punitive damages regarding the tortious interference claim.

The conduct submitted in Instruction No. 24, EEP's verdict-directing instruction, was that "Siemens caused [St. John's] not to pay the final payment to EEP under the contract with EEP, and ... Siemens did so intentionally and without justification or excuse." Instruction No. 26 was the damage instruction for the tortious interference claim.

Siemens' post-trial motion included the request for remittitur of the punitive damages awarded by Verdict D. Siemens contended the award was excessive. The trial court denied the motion for remittitur of the punitive damages awarded by Verdict D.

Siemens' Point II argues that the award of punitive damages under the facts in this case was a denial of its right to due process of law; that the award of punitive damages denied Siemens equal protection of law. Siemens relies on *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), and *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), as authority for its claim that the trial court erred in denying its request to remit the punitive damages awarded by Verdict D.

*State Farm* and *BMW* were actions seeking actual and punitive damages for fraudulent conduct. Both were actions against corporations whose business interests and business activities were conducted throughout the United States. The plaintiff in each case relied on actions taken by State Farm Mutual Automobile Insurance Co. and BMW of North America, Inc., in states other than the ones in which actions were brought as bases for the award of punitive damages. In *BMW*, the purchaser of a new BMW automobile was awarded actual damages of $4,000 and punitive damages of $4,000,000 (reduced after appeal in state court to $2,000,000). In *State Farm*, a policyholder was awarded $1,000,000 actual damages and $145,000,000 punitive damages. The punitive damage award was reversed and remanded to the state courts for further proceedings.

EEP's claim that resulted in the punitive damages Siemens challenges by this point was not founded in fraud nor did it include claims for actions that occurred outside of Missouri. The evidence on which punitive damages were based included acts of performance and nonperformance occurring in business dealings relative to a single project located in Missouri. As such, this action is distinguishable on its facts, and on the basis for which recovery was allowed, from *State Farm* and from *BMW*. Nevertheless, principles relative to punitive damages discussed in *BMW* and in *State Farm* are instructive for purposes of analyzing the award of punitive damages to EEP.

 *State Farm* addressed the purpose of punitive damages and differentiated punitive damages from compensatory damages. "Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" 538 U.S. at 416, 123 S.Ct. 1513, quoting *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). "By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution." *Id. State Farm* further advised, "While States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards.... The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* (citations omitted.)

■ *BMW* explained that "[p]unitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." 517 U.S. at 568, 116 S.Ct. 1589. "Only when an award can fairly be categorized as 'grossly excessive' in relation to these interests does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id. BMW* reviewed three areas for the purpose of ascertaining if the punitive damages in that case were within "the zone of arbitrariness that violates the Due Process Clause." The areas reviewed were (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages to compensatory damages, i.e., the actual harm inflicted on a plaintiff; and (3) comparison of the punitive damages assessed to penalties that might otherwise be imposed for comparable misconduct. The same indicia were reviewed in ascertaining the reasonableness of the punitive damages considered in *State Farm. See State Farm,* 538 U.S. at 409, 123 S.Ct. 1513, *et seq.*

Although the nature of the cause of action in this case, tortious interference with contract, differs from the fraud-based causes of action in *BMW* and *State Farm,* the first two indicia of reasonableness of punitive damages reviewed in those cases appear equally apropos to this case. The degree of reprehensibility of conduct was characterized in *BMW* and *State Farm* as the most important indicium of the reasonableness of punitive damage awards. *State Farm,* 538 U.S. at 409, 123 S.Ct. 1513; *BMW,* 517 U.S. at 575, 116 S.Ct. 1589. The trial court's remarks in granting judgment n.o.v. regarding the punitive damages the jury awarded, other than those assessed in Verdict D, reveal that the trial court's opinion was that Siemens' conduct in its dealings with EEP was grossly reprehensible. The trial court

stated that it was setting aside the punitive damage awarded in Verdicts B and C only because no actual damages were awarded on the claims to which those verdicts applied. The trial court said that if, under existing law, it could, "it would sustain those two verdicts."

■ This court's review of the record on appeal regarding the actions of Siemens during the course of the work it was required to perform clearly reveals that Siemens' actions were egregious, unwarranted, overbearing, reprehensible, and without justification. There was evidence that the schedule for completing the work for St. John's was based on a proposed schedule submitted by Siemens. Siemens, however, failed to complete its work on schedule. Siemens ceased communicating with EEP during the course of its work on the project. Siemens refused to meet with EEP and the other subcontractors to assess the status of the work on the project. Siemens refused to submit reports and other written material its contract required for justification for payment requests.

Siemens was not entitled to payment until EEP received payment from St. John's. Siemens was required to cooperate with EEP on issues related to payment. However, Siemens refused to cooperate and failed to submit reports and other data that would have permitted EEP to receive the payments from St. John's to which it would have been entitled. Notwithstanding those failures, Siemens imposed a mechanic's lien on St. John's property and, for purposes of imposing that lien, erroneously represented that its work on the project was complete when, in fact, it was not. Siemens thereafter initiated litigation that sought to perfect the mechanic's lien.

Siemens ultimately negotiated an agreement with St. John's that resulted in payment to it of funds that, by contract, were owed EEP. Siemens did this although it was 617 days past its completion date and was, therefore, liable to EEP for liquidated damages of $250 per day for that period. Finally, upon securing payment of the sum St. John's was obligated by contract to pay EEP, Siemens entered into an agreement by which the agreement would not be made known to EEP. The agreement became known to EEP on the day litigation between it and Siemens began.

The conduct of Siemens was reprehensible and unconscionable. Its harm to EEP went beyond the compensatory damage to which EEP was entitled. The indicium of reprehensibility weighs heavily in favor of EEP. Siemens' conduct imposed unwarranted obligations and harm upon EEP that went beyond concrete damages compensatory awards could address. Punitive damages were appropriate in these circumstances to deter such conduct in future business affairs and for purposes of retribution.

■ The second guidepost set forth in *BMW* and *State Farm* for reviewing punitive damages is the ratio of punitive damages to the compensatory damages. *State Farm* declared there was no bright-line ratio which punitive damages cannot exceed, noting, however, "that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425, 123 S.Ct. 1513.

The compensatory damages awarded in Verdict D were $26,100. The ratio of punitive damages of $500,000 to that amount would be approximately 19:1. Additionally, the breach of contract by St. John's that was the product of Siemens tortious interference resulted in recovery by EEP

from St. John's of compensatory damages of $101,546.25. If the two recoveries of compensatory damages—the $26,100 from Siemens and the $101,546.25 from St. John's—are added together, the damages that occurred by reason of Siemens' tortious conduct totals $127,546.25. The ratio of the punitive damages to that amount is less than 4:1. Considering the reprehensible conduct by Siemens, the time over which it occurred, the blatant refusal of Siemens to cooperate with EEP, even to the extent that Siemens surreptitiously dealt with St. John's in diverting the payment that would otherwise have been paid EEP, and the very nature of a claim for tortious interference with contract, this court concludes the ratio of punitive damages to compensatory damages awarded EEP is not an amount that enters the realm that constitutes a violation of due process of law.

■ The final guidepost for reviewing punitive damages that was followed in the fraud claims in *BMW* and *State Farm* was a comparison of punitive damages assessed to penalties that might otherwise be imposed for comparable misconduct. While such comparisons may be possible when addressing conduct of a fraudulent nature, this court does not find that factor to be of assistance in reviewing punitive damages awarded regarding tortious interference. Tortious interference with contract involves acts that are ethically and morally reprehensible and are, in a civil sense, legally wrongful, whereas fraud claims founded in misrepresentation type acts are akin to criminal conduct for which sanctions might be identified and compared. The factor of comparative penalties is inconsequential in an action for tortious interference with contract.

The punitive damages awarded EEP were not extraordinary so as to fall within a zone of arbitrariness that denied Sie-

mens due process of law. Point II is denied.

■ Appellants' Point III is a claim of error by St. John's. Point III complains that the trial court erred in entering judgment against St. John's for breach of contract because the payment by St. John's to Siemens of $148,475 discharged the obligation St. John's had to EEP because "EEP accepted that substituted performance by claiming $148,475 as an offset to Siemens' claim" and EEP was not damaged in that "EEP received the final payment on its contract in the form of a credit from Siemens." Point III is directed to the part of the judgment that awarded the damages assessed by Verdict A. It provides:

It is hereby Ordered, Adjudged and Decreed, that Judgment be entered on Verdict A in favor of EEP on its Cross–Petition against St. John's and that EEP have and recover from St. John's damages in the amount of $101,546.25, prejudgment interest thereon in the amount of $70,108.64 from August 8, 2000, through June 9, 2004, with interest at a rate of 18% per annum from June 10, 2004, on the sum of $101,546.25, and with interest at a rate of 9.0% per annum from June 10, 2004, on the sum of $70,108.64.

The amount of damages awarded EEP was derived from the first trial in this case, the trial that produced the judgment dated November 28, 2000. *See* n. 1, *supra.* The judgment from the first trial was not appealed.

In the second trial, the trial that produced the judgment that is the subject of this appeal, Instruction No. 9, the damage instruction applicable to the claim to which St. John's Point III is directed, told the jury, "If you find in favor of [EEP] then you must award [EEP] $101,546.25." The verdict director, Instruction No. 7, told the jury:

Your verdict must be for EEP if you believe:

First, EEP and defendant St. John's entered into an agreement whereby EEP agreed to furnish and install an energy management system in [St. John's] hospital and buildings and St. John's agreed to pay [EEP] $1,484,750.00 and

Second, EEP substantially performed such agreement in a workmanlike manner, and

Third, St. John's failed to perform its agreement, and

Fourth, EEP was thereby damaged,

unless you believe EEP is not entitled to recover by reason of instruction number *8*.

Instruction No. 8 was St. John's converse instruction that told the jury its verdict was to be for St. John's if it believed (1) St. John's paid Siemens $148,475; (2) EEP's obligation to Siemens was reduced by that amount due to the payment by St. John's to Siemens; and (3) that reduction "constituted payment to EEP of $148,475."

St. John's argues that EEP accepted St. John's payment of $148,475 to Siemens as substituted performance of St. John's obligation to pay EEP; that consistent with Restatement (Second) of Contracts, § 278(1), p. 373 (1981), this satisfied St. John's obligation to EEP. Section 278(1) of the Restatement provides, "If an obligee accepts in satisfaction of the obligor's duty a performance offered by the obligor that differs from what is due, the duty is discharged."

The fallacy of St. John's argument is that EEP did not accept St. John's payment to Siemens as payment in satisfaction of a debt owed by EEP. To the contrary, EEP had no knowledge that such a

payment was made until the morning of the first trial in this case when, pursuant to a settlement of disputes between Siemens and St. John's, Siemens dismissed its action against St. John's and amended the action it had brought to enforce a mechanic's lien to an action for breach of contract against EEP.

St. John's relies on *Combs v. Gray,* 769 S.W.2d 806 (Mo.App.1989), and *Woolfolk v. Jack Kennedy Chevrolet Co.,* 296 S.W.2d 511 (Mo.App.1956), as support for Point III. In each of those cases, the party to whom a contractual obligation was owed knowingly accepted what was tendered in satisfaction of the obligor party's obligation. In *Combs,* the maker of a promissory note sued to compel the payee to release a deed of trust given as security for the indebtedness represented by the promissory note. The maker had previously paid the full amount due on the note. The payment of the amount owed had been accepted by the payee but the deed of trust was never released. This court held that the payee had accepted the amount tendered by maker as payment in full and ordered the deed of trust released.

In *Woolfolk,* an automobile dealer, as part of an automobile sales contract, was obligated to obtain a policy of automobile insurance for the buyer. The dealer was unable to obtain a policy that covered the interest of the buyer, but did obtain a policy that covered the buyer's mortgagee payee. A small refund of the amount the customer had deposited with the dealer was refunded and deposited by the customer, and the customer was provided with a summary of the coverage that was obtained together with copies of endorsements to the policy that was purchased. An automobile accident occurred. The customer had no coverage for his interest in the automobile. The customer sued the automobile dealer. The court held that the facts and circumstances of the case established that the customer had accepted the actions of the automobile dealer as performance of the dealer's obligation.

EEP did not accept the actions of St. John's in paying the amount owed per the terms of its contract with EEP to Siemens as satisfaction of St. John's obligation to EEP. EEP was damaged in that Siemens' claim that it was owed $201,178.75 was not sustained. Siemens was owed $46,928.75 ($201,178.75 less liquidated damages in the amount of $154,250 owed by Siemens to EEP). St. John's actions in paying Siemens the $148,475 installment owed by St. John's to EEP resulted in damages to EEP in the amount of $101,546.25, the amount awarded in the judgment relative to Verdict A. St. John's Point III is denied.

Appellants' Point IV is directed to the award of attorneys' fees against St. John's. Point IV asserts the trial court erred in awarding attorneys' fees to EEP on EEP's contract claim "because EEP did not prove the reasonable value of the recoverable fees, in that it neither allocated between fees incurred on the contract claim and fees incurred on the tort claims nor excluded fees on issues on which [EEP] did not prevail."

Following receipt of verdicts, EEP filed a motion for attorneys' fees and costs. It sought award of attorneys' fees in the amount of $65,493.75. A memorandum in support of the motion was filed. A summary of "[a]ll costs and fees ... incurred since the first trial" that "were not a part of the first trial fees awarded by the jury as actual damages" was attached to the memorandum as "Exhibit A." The trial court subsequently granted the request and awarded judgment in favor of EEP and against St. John's for the amount of attorneys' fees listed on Exhibit A, $65,493.75.

[W]ith certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits.

*Nix v. Nix,* 862 S.W.2d 948, 952 (Mo.App. 1993).

There was no provision in the contract with St. John's regarding recovery of attorneys' fees. The terms of the contract with St. John's, however, included a schedule for payments to be made by St. John's to EEP. Section 431.180, RSMo 2000, provides:

1. All persons who enter into a contract for private design or construction work after August 28, 1995, shall make all scheduled payments pursuant to the terms of the contract.

2. Any person who has not been paid in accordance with subsection 1 of this section may bring an action in a court of competent jurisdiction against a person who has failed to pay. The court may in addition to any other award for damages, award interest at the rate of up to one and one-half percent per month from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party. If the parties elect to resolve the dispute by arbitration pursuant to section 435.350, RSMo, the arbitrator may award any remedy that a court is authorized to award hereunder.

3. The provisions of this section shall not apply to contracts for private construction work for building, improvement, repair or remodeling of owner-occupied residential property of four units or less.

4. For purposes of this section, design or construction work shall include design, construction, alteration, repair or maintenance of any building, roadway or other structure or improvement to real property, or demolition or excavation connected therewith, and shall include the furnishing of surveying, architectural, engineering or landscape design, planning or management services, labor or materials, in connection with such work.[4]

St. John's does not argue that § 431.180 does not apply in this case; however, it points out that tort claims were tried in addition to claims based on EEP's contract with St. John's; that for there to be recovery, "it is necessary to 'segregate and allocate' between fees that are recoverable and fees that are unrecoverable." St. John's contends failure to do so is a basis for denial of recovery altogether.

This court finds no basis for the award of attorneys' fees for any part of the litigation other than the contract action to collect the installment St. John's owed but did not timely pay. Section 431.180 applies to that circumstance. The award of attorneys' fees must be reversed because the award failed to properly segregate attorneys' fees to that part of the action. The case will be remanded for the trial court to address that part of the judgment and to enter a new judgment that limits the award of attorneys' fees in that manner. *See, e.g., State ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 836 (Mo.App.1995). St. John's argument that failure to segregate the attorneys'

4. Footnote in text of statute regarding the change of the word "of" to "or" by the reviser of statutes is omitted.

fees in that manner warrants denial of any attorneys' fees is not supported by authority cited in its brief. This court, in its independent research, finds no basis for that claim. St. John's Point IV is granted in part and denied in part.[5]

Appellants' final point on appeal, St. John's Point V, argues that the trial court erred in awarding attorneys' fees and "penalty interest" against St. John's on EEP's contract claim because the circumstances in the case do not support such an award because "it was reasonable for St. John's to pay the $148,475 to Siemens because St. John's faced potential liability to Siemens on the [mechanic's] lien." St. John's argues it is not liable for the attorneys' fees and what it characterizes as "penalty interest" because the decision to make the payment to Siemens was made in good faith.

 The second sentence of § 431.180.2 states, "The court *may* in addition to any other award for damages, award interest at the rate of up to one and one-half percent per month from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party." (Emphasis added.) Thus, as St. John's suggests, the award of attorneys' fees and interest is discretionary. *See In re Estate of Parker*, 25 S.W.3d 611, 616 (Mo.App.2000); *Allen v. Pub. Water Supply Dist. No. 5*, 7 S.W.3d 537, 540–41 (Mo.App.1999). St. John's argues that because its action was taken in good faith, the trial court abused

its discretion in awarding EEP attorneys' fees and interest. The statute, however, contains no "good faith" exception regarding a court's authority to make and award of attorneys' fees and interest.[6] St. John's Point V is denied.

*EEP's Appeal, No. 26702*

EEP's appeal is directed to the trial court granting Siemens' motion for judgment notwithstanding the verdict with respect to the verdicts that awarded punitive damages on EEP's counterclaims for malicious prosecution and abuse of process— the awards in Verdicts B and C. Verdict B was for EEP and against Siemens on EEP's claim for malicious prosecution. It awarded $0 actual damages and $3,000,000 punitive damages. Verdict C was for EEP and against Siemens on EEP's claim for abuse of process. It awarded $0 actual damages and $201,175 punitive damages. The trial court granted Siemens' motion for judgment n.o.v. on both claims and entered judgment on those claims for Siemens for the reason that there was no award of actual damages on either claim.

EEP states the following two points as the bases for its cross-appeal, both of which are numbered "VI".

VI. The Punitive Damages awarded by the Jury were appropriate and should be allowed.

VI. [sic] Remittitur was not appropriate.

**5.** EEP filed a motion with this court requesting that this case be remanded for the trial court to determine any attorneys' fees to which it is entitled in this appeal. That motion is granted.

**6.** § 34.057, RSMo 2000, the Missouri Public Works Prompt Payment Act, contains a "good faith exception." *See* § 34.057.1(7). St. John's argues the same latitude provided for

public contracts should apply to private contracts. St. John's points to dicta in a case recently decided by the Western District of this court, *Vance Brothers, Inc., v. Obermiller Construction Services, Inc.*, 2005 WL 147144 (No. 62876, Mo.App.W.D., decided 1/25/05), that held differently. St. John's argues the statement that a good faith exception should not be read into § 431.180 "is flatly wrong." This court does not agree.

Rule 84.04 mandates what an appellant's brief shall contain. "Violations of Rule 84.04 are grounds for a court to dismiss an appeal." *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo.App.1999). Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary. *Keeney v. Missouri Highway & Transp. Com'n,* 70 S.W.3d 597, 598 n. 1 (Mo.App.2002). "That discretion is generally not exercised unless the deficiency impedes disposition on the merits. 'A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal.'" *Id.,* quoting *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 647 (Mo.banc 1997).

*Hampton v. Davenport,* 86 S.W.3d 494, 496 (Mo.App.2002).

Rule 84.04(a)(4) requires an appellant's brief to include "points relied on." Rule 84.04(d) prescribes what points relied on shall contain. Rule 84.04(d)(1) explains:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Rule 84.04(d)(4) explains, "Abstract statements of law, standing alone, do not comply with this rule. Any reference to the record shall be limited to the ultimate facts necessary to inform the appellate court and the other parties of the issues. Detailed evidentiary facts shall not be included."

EEP's points relied on do not state the rulings that are challenged as error. The points fail to state concise legal reasons for the claims that error occurred. They do not explain in summary fashion why, in the context of the case, the trial court's actions constitute reversible error. They do not preserve issues for appellate review. That failing, however, does not impede disposition of the issues EEP raises on the merits.

As this court understands EEP's complaint, EEP contends that because actual damages were awarded on one of three tort claims that were tried, the requirement that actual damages be awarded in order to obtain punitive damages should not apply to the tort claim for which actual damages were not awarded. This court does not agree. Damages are assessed separately for each claim that is tried. There can be no award of punitive damages absent an award of actual damages. *Forbes v. Forbes,* 987 S.W.2d 468, 469 (Mo.App.1999). Granting a judgment notwithstanding the verdict is appropriate when a jury verdict awards punitive damages but no actual damages. *Id.* EEP's cross-appeal is denied.

*Disposition*

The part of the judgment that awards EEP attorneys' fees in its action for breach of contract is reversed. The case is remanded. The trial court is directed to determine the reasonable attorneys' fees attributable to EEP's action against St. John's for breach of contract and to deter-

mine if EEP is entitled to attorneys' fees applicable to this appeal. Upon making that determination, the trial court may, in its discretion, include that amount with the other damages awarded EEP on its breach of contract claim against St. John's. In all other respects, the judgment is affirmed. Following consideration of the attorneys' fees with respect to EEP's breach of contract action against St. John's, the trial court shall enter judgment consistent with this opinion.

BATES, C.J., and BARNEY, J., concur.