174 N.J. Super. 418 (1980)
416 A.2d 952
AUXTON COMPUTER ENTERPRISES, INC., PLAINTIFF-RESPONDENT,
v.
DAVID PARKER, NIKOLAOS SPIRIDELLIS AND SPIRIDELLIS & ASSOCIATES, INC., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1980.
Decided May 21, 1980.
*420 L. Steven Pessin argued the cause for appellant David Parker.
John L. Weichsel filed brief in behalf of appellants Nikolaos Spiridellis and Spiridellis and Associates, Inc.
Thomas D. Ruane argued the cause for respondent (Robinson, Wayne & Greenberg, attorneys).
Before Judges LORA, ANTELL and PRESSLER.
The opinion of the court was delivered by LORA, P.J.A.D.
Plaintiff Auxton Computer Enterprises, Inc. (Auxton) is engaged in the business of providing data processing consulting services and computer programmers as well as analysts on a contract basis to firms seeking such assistance. Defendant Spiridellis and Associates (Associates) is engaged in similar work. Defendant Nikolaos Spiridellis (Spiridellis), the president and principal officer of Associates, is and was the chief operating officer of that enterprise.
On June 22, 1972 defendant Parker entered Auxton's employ as a data processing consultant, assigned to work at various client-companies by Auxton. While on one such assignment at the American Broadcasting Company in 1975, Parker decided to look for another job and contacted several other prospective employers, including Spiridellis and Associates.
*421 Parker and Spiridellis arranged for an interview, which Parker attended in January 1976 and which had been arranged by one Paul Chu, a former employee of Auxton who had gone to work for Associates. During that meeting Parker was questioned generally concerning his qualifications, and Spiridellis likewise informed Parker of the general operations of Associates.
The interview between Parker and Spiridellis ended favorably, with Spiridellis requesting Parker to return for an interview with one of Associates' senior technicians. That interview subsequently took place in February 1976. However, there was no job offer made to Parker at that time.
On March 18, 1976, a Thursday evening, Parker received a telephone call from Spiridellis, who asked him if he wanted to go for a technical interview the next day, March 19, 1976, at the offices of Pan American Corporation in Rockleigh, New Jersey, on behalf of Associates. Associates, which had been doing data processing consultative work for Pan Am for approximately six or seven months prior thereto, had an opportunity to enlarge their relationship with Pan Am by attending this technical interview with the prospect of providing their services with respect to Pan Am's passenger revenue data processing system which was then being either developed or improved upon. Associates had interviews lined up for five or six other technicians in addition to Parker.
When Spiridellis contacted Parker that evening, Parker, apparently suffering from a sore throat, did not give Spiridellis any definitive answer to his offer and request to have him appear in Rockleigh, New Jersey, on March 19, 1976. At the time Spiridellis called Parker, he knew that Parker was employed by plaintiff. However, neither Parker nor Spiridellis nor Associates had any knowledge that plaintiff was also seeking to obtain the Pan Am contract.
Parker subsequently determined to go to the Pan Am interview and called in sick insofar as his work at ABC on behalf of Auxton was concerned. On that day, by sheer coincidence, Lilla *422 Leuchs, a marketing representative of Auxton, was at the offices of Pan Am trying to solicit work for Auxton from Pan Am, and learned that Parker was attending an interview there.
On the following Monday, the interview having taken place on Friday, a representative of Auxton confronted Parker with the fact that he had been at Pan Am the previous Friday. Parker initially denied having been there, but later decided to offer his resignation, which resulted, however, in his being terminated summarily by Auxton.
When Spiridellis learned of Parker's termination, he hired him, apparently due to a sense of moral obligation. Parker initially worked at a designated job site for two or three days, and then, upon receiving favorable approval from Pan Am, Parker went to work as an employee of Associates on the Pan Am job for a period of almost one year.
Auxton brought this claim against Parker, alleging breach of his duty of loyalty to his employer, interference with Auxton's prospective economic advantage and unfair competition. As against defendants Spiridellis and Associates, Auxton alleged that they had induced Parker to violate his duty of loyalty to plaintiff by recruiting him to solicit business for them while aware that Parker was still employed by Auxton. Following a bench trial and accounting of the losses Auxton allegedly sustained by reason of Parker's termination of employment in March 1976, the trial judge assessed damages jointly and severally against all defendants in the amount of $10,601.38. He further ordered that all counts in the complaint based upon alleged interference with prospective economic advantage and all requests for punitive damages be dismissed.
At oral argument we were advised that the matters in dispute between Auxton and Spiridellis and Associates had been settled while A-832-78 was pending in this court. Accordingly, the appeal and cross-appeal in A-832-78 are dismissed as moot. No costs.
Appellant Parker contends that the trial judge erred when he found that Parker had breached his duty of loyalty to Auxton. *423 He asserts he was not soliciting Auxton's clients nor forming a rival corporation, but merely seeking other employment, which he had a clear right to do, and hence his conduct did not constitute a breach of duty of loyalty. Auxton, on the other hand, argues that Parker breached his duty of loyalty to Auxton by presenting himself to Pan Am as a representative of Spiridellis and Associates while in the employ of Auxton. It bottoms its position on the fact that Parker should have been at work on March 19, 1976, instead of attempting to secure work for a competitor of Auxton; Parker utilized his talents on behalf of a competitor of his employer, and Parker presented himself as an employee of Associates. Auxton suggests that, cumulatively, Parker's "actions were in callous `disregard [of] his duty to serve his principal with only his principal's interest in mind.'" (Quoting Restatement, Agency 2d, § 394).
The trial judge, while finding that none of the defendants knew that Auxton was soliciting Pan Am's business, found from the "totality of the circumstances" a breach of the duty of loyalty by Parker. In reaching that conclusion, the trial judge reasoned:
When Parker attended the March 19th interview he was still on Auxton's payroll. I have found that his excuse of illness given to Auxton was a mere sham utilized to permit him not only to aid himself but to aid plaintiff's competitor on plaintiff's time. That is undisputed. He did not resign on the 19th day of March. To use an old expression, he wanted his cake and he wanted to eat it as well. He wanted it both ways that day. The facts show that he continued to work for the plaintiff for approximately an additional week, until he was fired.
An employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer. The only restriction to such action is that he may not solicit his employer's customers for his own benefit before he has terminated his employment. Nor may he do other similar acts in direct competition with the employer's business. This would constitute a breach of the undivided loyalty which the employee *424 owes to his employer while he is still employed. United Board and Carton Corp. v. Britting, 63 N.J. Super. 517, 524, 530 (Ch.Div. 1960), aff'd 61 N.J. Super. 340 (App.Div. 1960), certif. den. 33 N.J. 326 (1960); Haut v. Rossbach, 128 N.J. Eq. 77 (Ch. 1940). See, also, AGA Aktiebolag v. ABA Optical Corp., 441 F. Supp. 747, 754 (E.D.N.Y. 1977). It is the nature and character of the act performed that will determine if there has been an actionable wrong and whether or not the act has caused some particular injury to the employer. Cudahy Co. v. American Laboratories, Inc., 313 F. Supp. 1339, 1346 (D.Neb. 1970); Bancroft-Whitney Co. v. Glen, 64 Cal.2d 327, 49 Cal. Rptr. 825, 411 P.2d 921, 935-936 (Sup.Ct. 1966); United Board and Carton Corp. v. Britting, supra at 525. The mere planning, without more, is not a breach of an employee's duty of loyalty and good faith to his employer. Cudahy Co., supra at 1346; Metal Lubricants Co. v. Engineered Lubricants Co., 411 F.2d 426, 429 (8 Cir.1969); Restatement, Agency 2d, § 393, Comment [e].
Admittedly, the mere decision to enter into competition may eventually prove harmful to the former employer. However, because of the competing interests of allowing an employee some latitude in switching jobs and at the same time preserving some degree of loyalty owed to the employer while on the job, neither the decision to compete nor the consequent entering into competition alone is actionable. Cudahy Co., supra at 1346. If the right to change jobs is to be in any way meaningful for an employee not under contract for a definite term, it must be exercisable without the necessity of revealing the plans to the employer. National Rejectors, Inc. v. Trieman, 409 S.W.2d 1, 26-27 (Mo.Sup.Ct. 1966). It is something more than preparation which is so harmful as to substantially hinder the employer in the continuation of his business. Obviously, each case must be decided upon its own facts; because of the competing interests the actionable wrong is a matter of degree. "No ironclad rules as to the type of conduct which is permissible can be stated, since the spectrum of activities in this regard is as broad as the ingenuity of man itself." Bancroft-Whitney, supra, 64 Cal.2d at 346, 49 Cal. Rptr. at 839, 411 P.2d 935 at 935.
*425 It is clear, then, in light of these general principles, that the employee owes a duty of loyalty to the employer, and the employee must not, while employed, act contrary to the employer's interests. Equally clear is the proposition that the employee is entitled to make "arrangements" for some new employment by a competitor and should be given some latitude in this regard.
In our view, the conduct of Parker, when assessed by the standards set forth above, does not amount to a breach of his fiduciary duty. While the undisputed evidence shows that Parker attended an interview at Pan Am on behalf of Associates at a time when he should have been fulfilling his employment responsibilities to Auxton, his conduct in that regard does not reach that level of impropriety which has heretofore been required when imposing liability for violating the duty of loyalty owed to an employer. Further, the trial judge's finding, which is amply supported by the evidence, that neither Parker, Spiridellis nor Associates knew that Auxton had intention of competing for Pan Am's work or was in fact competing that day for any work from Pan Am, also militates in favor of such a finding. Also significant is that until the time of Parker's termination he had neither accepted nor been offered any position by Associates. Therefore, absent a covenant not to compete or breach of a confidential relationship, liability may not be founded upon these facts for breach of duty of loyalty. Spiridellis did nothing to "pirate" Parker away from plaintiff. Neither Parker nor Spiridellis knew plaintiff was interested in the Pan Am job and this was not an attempt by Parker to solicit business on behalf of Associates. He was simply trying to get a job with Associates, and the latter was trying to get better connected with Pan Am and also considering hiring Parker for the job. We can see nothing so unfair, immoral or unethical about this conduct as to make it actionable.
Having so concluded, and in light of the settlement of the matters in dispute between plaintiff Auxton and defendants Spiridellis and Associates, we need not pass upon the remaining contentions of the parties to the consolidated appeals.
*426 The judgment of the Chancery Division in favor of plaintiff Auxton Computer Enterprises, Inc. and against the defendant David Parker is reversed.