**SCANWELL FREIGHT EXPRESS STL, INC., Respondent,**

v.

**Stevie CHAN and Dimerco Express (U.S.A.) Corp., Appellants.**

No. SC 86022.

Supreme Court of Missouri, En Banc.

April 26, 2005.

Rehearing Denied May 31, 2005.

James W. Erwin, Mary C. Bonacorsi, Thompson Coburn LLP, Bradley A. Winters, Mark L. Brown, St. Louis, for appellants.

Charles A. Seigel, III, Michael A. Wolff, St. Louis, for respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

Scanwell Freight Express STL, Inc., sued Stevie Chan for breach of fiduciary duty and Dimerco Express (U.S.A.) Corp. for conspiracy to breach fiduciary duty. Following a jury trial, Scanwell was awarded $54,000 in damages from Chan and $254,000 from Dimerco. After opinion by the Court of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is reversed, and the case is remanded.

I.

In brief, and in the light most favorable to the verdict as is required where, as here, there is a challenge to the sufficiency of the evidence, *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000), the facts are as follows:

Scanwell, a freight forwarding business, hired Chan in April 1996 to be the general manager of its St. Louis Office. Chan was an at-will employee, and she was not required to sign a non-compete agreement. While serving as Scanwell's general manager, Chan made arrangements with Dimerco, Scanwell's direct competitor, to open a Dimerco office in St. Louis. At Dimerco's request, Chan created a "business proposal" for this purpose. She also arranged for Dimerco to take over the lease of Scanwell's St. Louis office upon its expiration. Chan resigned from Scanwell effective March 1, 2001, and approximately one month later, Dimerco opened its St. Louis office with Chan as its general manager. Dimerco operated in the same premises that Scanwell previously occupied, employed most of the same employees as Scanwell, and for a while even used the same telephone number. Dimerco also acquired a number of Scanwell's customers.

Thereafter, Scanwell filed the suit against Chan and Dimerco that is the subject of this appeal.

## II.

In order to address the dispositive points on appeal, which are instructional error and submissibility, it is first necessary to identify and define the cause of action at issue. Scanwell's cause of action against Chan is labeled "breach of fiduciary duties." However, Scanwell describes its claim as a breach of a "fiduciary duty of loyalty," and its verdict director alleged that Chan committed a "breach of fiduciary duties" by "breach[ing] a duty of loyalty," as if a breach of fiduciary duties is the same as a breach of a duty of loyalty. Although the law is unclear whether or to what degree the two concepts overlap, in this case the question need not be resolved. In the employer-employee relationship, this Court, drawing on the Restatement (2d) of Agency, has implicitly recognized a separate cause of action for beach of the duty of loyalty, *Nat'l Rejectors, Inc. v. Trieman,* 409 S.W.2d 1, 41 (Mo. banc 1966), and it is apparent from the briefs and argument that that is the claim Scanwell is ultimately pursuing.

■ Under *Trieman,* the seminal case on which both sides rely, every employee owes his or her employer a duty of loyalty. *Trieman,* 409 S.W.2d at 41; *see also* Rest. (2d) Agency, sec. 387 (1958). The case arose when certain at-will employees were accused of misappropriating trade secrets from their employer in a scheme to compete with the employer. The factual context of the case is especially important because it involves the most common manifestation of the duty of loyalty, and the essence of Scanwell's claim here, which is that an employee has a duty not to compete with his or her employer concerning the subject matter of the employment. Rest. (2d) Agency, sec. 393 (1958). This Court described the duty of loyalty in the broad and general terms of section 387 of the Restatement (2d) of Agency, stating,

"[an employee] must not, while employed, act contrary to the employer's interests." *Trieman,* 409 S.W.2d at 41 (quoting *Midland–Ross Corp. v. Yokana,* 293 F.2d 411, 412 (3rd Cir.1961)). However, in addressing the corresponding duty not to compete, the Court held, nonetheless, that employees are allowed to "agree among themselves to compete with their then employer upon termination of their employment," and "[t]hey may plan and prepare for their competing enterprises while still employed." *Id.* at 26. Admittedly, the mere decision to enter into competition is "contrary to the employer's interests," but the Court saw the need to balance the duty not to compete with the interest of promoting free competition. *Id.* at 39–41. As some courts have put it, the law allows employees the privilege to plan and prepare for competition in recognition of the "competing interests of allowing an employee some latitude in switching jobs and at the same time preserving some degree of loyalty owed to the employer." *Cudahy Co. v. Am. Lab., Inc.,* 313 F.Supp. 1339, 1346 (D.Neb.1970); *see also Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564, 569 (1978); *Anxton Computer Enter., Inc. v. Parker,* 174 N.J.Super. 418, 416 A.2d 952, 955 (A.D.1980).

■ Although the *Trieman* Court did not elaborate on the conduct that would constitute a breach of the duty, it necessarily follows that a breach arises when the employee goes beyond the mere planning and preparation and actually engages in direct competition, which, by definition, is to gain advantage over a competitor. The Restatement (2d) of Agency, sec. 393, cmt. e, which this Court cited with favor in *Trieman,* plays on the same idea, further describing the kinds of activities that can constitute a breach of the duty of loyalty. That comment, in pertinent part, states:

After termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

(citation omitted).

## III.

■ Applying these standards, this Court concludes that Scanwell presented a submissible case that Chan breached her duty of loyalty. Chan's actions were clearly contrary to Scanwell's interests, and when viewed in the light most favorable to the verdict, her actions, in at least two respects, went beyond mere planning and preparation to compete. In these two respects, a more detailed recitation of the evidence of Chan's activities before she left Scanwell's employment is necessary, keeping in mind that Dimerco and Scanwell were in direct competition.

First, Chan gave Dimerco confidential information about Scanwell's operations and customers. This included general information on Scanwell's customer base and detailed information on a few of Scanwell's customers. Most of the evidence centered on the fact that Chan gave Dimerco a customer profile of one of Scanwell's largest customers, which included contact information, special handling requirements, rate structure, billing instructions, and other information. At trial, Chan admitted that the customer profile was confidential "[to] some degree" and that it would be helpful to a competitor in soliciting the business of the customer. Dennis Choy, Scanwell's president, also testified that this information was confidential and that, in fact, customer profiles were "the most vital pieces of information for any company to keep within [itself]." Although Chan and Dimerco argue that some of the information in the profile was not confidential because it could be obtained from other sources such as the customers themselves, at least some of the information in the profile, such as Scanwell's air freight rates, was entirely unavailable. Regardless of the extent of the disclosure of confidential information, as other courts have aptly noted, even "slight assistance to a direct competitor can constitute a breach of the employee's duty of loyalty." *Cameco, Inc. v. Gedicke,* 157 N.J. 504, 724 A.2d 783, 789 (1999).

A second and more egregious activity was that Chan, while still employed by Scanwell, secured Scanwell's leased premises—Scanwell's business office—for Dimerco. The key testimony on the matter was uncontroverted. In 1998, Chan, as office manager, signed the original lease of the premises on behalf of Scanwell. The lease termination date was May 31, 2001, and Scanwell was required to exercise the renewal option by January 31, 2001. However, shortly after signing the lease in 1998, the landlord contacted Chan and requested that the termination date be moved up to March 31, 2001, and that the renewal option deadline by moved up to December 1, 2000. Chan agreed, signed the amended lease, and sent it to Scanwell headquarters in Chicago. In the fall of 2000, as the December 1, 2000 deadline approached, Chan, who was by then preparing to leave Scanwell and open the

Dimerco office, took no action to renew the lease for Scanwell and did not notify Scanwell's home office that the renewal deadline was approaching.

Then in early February 2001, while still employed by Scanwell and at a time the Scanwell's premises still could have been relet to Scanwell, Chan, with Dimerco's approval, negotiated and signed a lease of the same premises for Dimerco. Although Chan signed the lease on February 15, 2001, it was on February 20, 2001, that Chan first informed Scanwell that she planned to resign. That same day, she sent a letter to her supervisor at Scanwell, M.B. Hassan, stating, "[t]he new rental lease has been turned back to the landlor[d] and will not be renewed. You can contact [the landlord's agent] if you have [a] different arrangement. Otherwise the lease will end[ ][in] March."

While Chan and Dimerco claim that there are no cases holding that an employee owes a "duty to remind" his employer of its legal rights and obligations, they miss the larger issue. Chan did not merely fail to remind Scanwell of the renewal deadline, she arranged for Scanwell's direct competitor to take over the premises, and, in doing so, prevented Scanwell from being able to re-lease the premises after the renewal deadline had passed. As a result of her actions, Scanwell lost its business office, and Scanwell customers who thereafter called or visited the office talked with Dimerco representatives.

IV.

Despite this Court's conclusion that Scanwell made a submissible case on the dissemination of confidential information and the proof relating to the lease, instructional error requires reversal. Chan and Dimerco contend the instruction defining "a fiduciary relationship" was overbroad and that the verdict director gave the jury a "roving commission." This Court agrees on both points.

The definitional instruction given in this case stated that "A fiduciary relationship is established when one reposes trust and confidence in another in the handling of certain business affairs." Apparently, this instruction was offered under the misconception that the cause of action was one for breach of fiduciary duty rather than breach of the duty of loyalty. Even then, the instruction set out nothing more than the relationship that gives rise to a duty, but without identifying the duty. The existence of a duty, of course, is a matter of law for the court to decide, see, e. g., Senn v. Manchester Bank of St. Louis, 583 S.W.2d 119, 132 (Mo. banc 1979); Siefert v. Leonhardt, 975 S.W.2d 489, 492 (Mo.App. 1998), but it is the breach of the duty that is for the jury to decide. It is the duty, then, that must be defined in the instructions, rather than the relationship that gave rise to the duty.

■ Where, as here, an allegation of breach of the duty of loyalty is presented in the context of an employee acting in competition with his or her employer, a proper definitional instruction of the duty of loyalty, consistent with the foregoing analysis, must set out the following elements: 1) In general, an employee must not, while employed, act contrary to the employer's interest; 2) however, an employee may agree with others to compete upon termination of the employment and may plan and prepare for their competing enterprise while still employed; and 3) but an employee may not, while still employed, go beyond mere planning and preparation and act in direct competition with the employer. See Trieman, 409 S.W.2d at 26, 41; Rest. (2d) Agency, sec. 393, cmt. e. In the absence of such a definitional instruction, the jury was unaware of the conduct that the law prohibits, and prejudice re-

sulted because the jury was allowed to conclude that even mere planning and preparation for competition breached the duty.

This Court also concludes that Chan's verdict director, Instruction No. 7, constituted an impermissible "roving commission." "A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suit[ ] its fancy or its perception of logic' to impose liability." *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998) (quoting *Davis v. Jefferson Sav. & Loan Ass'n*, 820 S.W.2d 549, 556 (Mo.App.1991)). Instruction No. 7 stated:

> Your verdict must be for Plaintiff on its claim against Defendant Stevie Chan for breach of fiduciary duties if you believe:
>
> First, Defendant Stevie Chan, the General Manager of Plaintiff, owed a duty of loyalty to Plaintiff, and
>
> Second, during her employment with Plaintiff, Defendant Stevie Chan made arrangements to have Defendant Dimerco take over Plaintiff's business operation including securing Plaintiff's business lease for Defendant Dimerco, disclosing confidential information of Plaintiff to Dimerco, and
>
> Third, in so acting, Defendant Stevie Chan breached a duty of loyalty owed to Plaintiff, and
>
> Fourth, as a direct result of Defendant Stevie Chan's conduct Plaintiff was harmed.

Even if the duty of loyalty referred to in paragraphs "First" and "Third" had been properly defined, paragraph "Second" is fatally defective. By couching paragraph Second so that the ultimate allegation was that "Chan made arrangements for Dimerco to take over Scanwell's business opera-

tion," the verdict director made actionable the aggregate of all of Chan's conduct in making those arrangements, even those arrangements that involved mere "planning and preparation." The jury was not limited to the allegations relating to the lease and the dissemination of confidential information because those allegations were preceded by the word "including," which, generally speaking, is not a word of limitation. "Including" is a word of enlargement; "[w]hen used in connection with a number of specified objects, it implies that there may be others which are not mentioned." *St. Louis County v. State Highway Comm'n*, 409 S.W.2d 149, 153 (Mo. 1966). It may well be then, that the jury, in arriving at its verdict, took into consideration not only evidence relating to the lease and confidential information, but also evidence of other plans and preparations that were not actionable. It is in this way that the jury was given a roving commission.

## V. Conclusion

For the foregoing reasons, Scanwell's judgment against Chan must be reversed. Scanwell's judgment against Dimerco for conspiracy must be reversed as well because it is wholly derivative of the judgment against Chan, *see Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996), and because the definitional instruction and the separate verdict directing instruction suffered from the same infirmities as those pertaining to Chan. Reversed and remanded.

WHITE, C.J., WOLFF, STITH, PRICE and TEITELMAN, JJ., and SAUER, Sp.J., concur.

RUSSELL, J., not participating.