

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| CIBC BANK USA AND | ) | No. ED110284 |
| CIBC NATIONAL TRUST COMPANY, | ) | |
| | ) | Appeal from the Circuit Court |
| Appellants, | ) | of St. Louis County |
| | ) | 21SL-CC01042 |
| vs. | ) | |
| | ) | Honorable Virginia W. Lay |
| CHRISTOPHER WILLIAMS, et al., | ) | |
| | ) | |
| Respondents. | ) | Filed:  May 9, 2023 |

CIBC Bank USA and CIBC National Trust Company (collectively "CIBC") appeal the trial court's judgment granting the motion to dismiss filed by Christopher Williams, Brian Landzaat, BCCDP Bancorp, Inc., and Vista Finance, LLC (individually "Williams," "Landzaat," "BCCDP," and "Vista," respectively; collectively "Defendants").  The trial court's judgment dismissed CIBC's petition alleging Counts I-VI for failure to state a claim.  Because we hold CIBC's petition sufficiently alleged claims in Counts I-VI, we reverse the trial court's judgment dismissing each of those counts and remand for further proceedings consistent with this opinion.

## I.     BACKGROUND

Because this appeal involves a dismissal by the trial court on the grounds CIBC's petition failed to state a claim upon which relief can be granted, we begin by setting out the general allegations of CIBC's petition.  To avoid unnecessary repetition, additional factual allegations relevant to the specific counts in CIBC's petition will be discussed in Section II. of this opinion.

## A.      General Factual Allegations

CIBC is a financial institution that provides "tailored commercial, wealth management, personal, and small business financial solutions" to its customers. Williams was employed with CIBC from May 2012 until March 2021. At the time of his resignation, Williams' title was "Managing Director, Regional Manager." Landzaat was employed with CIBC from September 2006 to March 2021. At the time of his resignation, Landzaat's title was "Associate Managing Director, Investment Advisor II."

On April 19, 2012, Williams entered into a restrictive covenant agreement with CIBC ("the Williams Agreement" or "the Agreement").[1] The Agreement contained certain contractual provisions such as a non-compete clause and a provision regarding the use and disclosure of confidential information.[2] Furthermore, Williams and Landzaat were subject to CIBC's Code of Conduct during the course of their employment with CIBC. The Code of Conduct demanded that employees, *inter alia*, "avoid conflicts of interest," "safeguard customer and business information," and "protect CIBC's assets."

In early 2019, Williams began preparing to leave his employment with CIBC to form a new business venture then known as "Project Vista" (which later became Vista). Additionally, at some point during his employment with CIBC, Williams formed BCCDP, a corporation, to hold investment money and to be the corporate purchaser of any bank acquired in order to form Vista. Around this time, Williams informed Employee #1,[3] a CIBC employee, of his plan to start his own

---

[1] The Williams Agreement states the contracting parties are "The PrivateBank and Trust Company" and Williams. The PrivateBank and Trust Company changed its name to "CIBC Bank USA" on September 18, 2017.

[2] Specific provisions of the Williams Agreement will be discussed in greater detail in Section II. of this opinion.

[3] CIBC's petition contains several references to employees and customers using numeric or alphabetical aliases such as "Employee #1" or "Customer A." CIBC alleged in its petition that it was using aliases because of a protective order the parties consented to. In its petition, CIBC stated it would "send a confidential document to counsel for Defendants identifying the names of the anonymous [employees and] customers identified by numeric [and alphabetical] designation[s] throughout [the petition]." Accordingly, we infer that CIBC was aware of the specific identities of the parties which were referenced using aliases. *See Smith v. Stewart*, 644 S.W.3d 5, 10 (Mo. App. E.D. 2022).

company and "directly asked [the employee] to leave CIBC with him for the new wealth management company he planned to form and operate." Williams informed this employee that Williams had asked Landzaat to join his new company and Landzaat had accepted the invitation. Additionally, at some point before October 2019, Williams solicited former Associate Managing Director, Lincoln Sorensen, to leave CIBC and join Vista.

In November 2020, Williams formed Vista. Vista is a wealth management services company that competes with CIBC. On March 1, 2021, Williams and Landzaat resigned from their positions at CIBC. Williams is now an owner of Vista and works as a private wealth advisor for Vista. Landzaat is also an owner of Vista, and works as its Chief Compliance Officer.

As of July 2021, approximately twenty-eight accounts had moved assets from CIBC to Vista and CIBC had lost more than $76 million in assets under management and $25 million in outstanding loans due to Defendants' alleged actions.

**B.      Subsequent Procedural Background**

In July 2021, CIBC filed its first amended petition for damages and injunctive relief against Defendants. The petition asserted six counts requesting relief against the various defendants either individually or collectively. In Count I, CIBC asserted Williams breached the terms of the Williams Agreement. In Count II, CIBC alleged Williams and Landzaat breached their fiduciary duties. In Count III, CIBC claimed Williams and Landzaat breached their duties of loyalty. In Count IV, CIBC contended Defendants tortiously interfered with its business expectancy. In Count V, CIBC maintained Defendants were unjustly enriched financially. Finally, in Count VI, CIBC requested that the trial court provide injunctive relief against Williams.

In August 2021, Defendants filed a joint motion to dismiss all six counts of CIBC's petition. After holding a hearing on the motion, the trial court entered its judgment dismissing all

six counts of CIBC's petition for failure to state a claim upon which relief can be granted.  This appeal followed.

## II.    DISCUSSION

CIBC asserts seven points on appeal which argue the trial court erred in granting Defendants' motion to dismiss CIBC's petition for failure to state a claim upon which relief can be granted.  For the reasons discussed in detail below, we agree, and we hold CIBC sufficiently stated a claim in each of the six counts alleged in its petition.

### A.    Standard of Review and General Law for All Points on Appeal

This Court's review of the trial court's grant of a motion to dismiss is *de novo*.  *Smith v. Stewart*, 644 S.W.3d 5, 10 (Mo. App. E.D. 2022).  "We review a motion to dismiss for failure to state a claim upon which relief may be granted solely to determine the adequacy of the plaintiffs' petition.  The petition must allege facts that, if true, meet the elements of any recognizable cause of action."  *Id*. (internal citation omitted).

"We assume all of the plaintiffs' allegations in the petition are true and view all reasonable inferences therefrom in favor of the plaintiffs."[4]  *Id*.  Furthermore, we "consider [ ] exhibits attached to the petition as a part of the allegations when [we] review[ ] a trial court's grant of a motion to dismiss."  *Id*. (citing, *inter alia*, Missouri Supreme Court Rule 55.12 (effective from September 1, 1973 to the present) (providing "[a]n exhibit to a pleading is a part thereof for all purposes")).  Accordingly, the plaintiffs' petition is adequate if the petition and the exhibits attached allege any set of facts that, if proven, would entitle the plaintiffs to relief.  *Smith*, 644

---

[4] While we assume all of the allegations in the CIBC's petition are true at this stage in the proceedings, *see Smith*, 644 S.W.3d at 10, nothing in this opinion should be construed as a finding of fact that would govern any further proceedings relating to this case.  Moreover, we note there may be facts developed and considered on a motion for summary judgment or at trial that foreclose CIBC relief on some or all of its counts.  *See Mental Health Associates, Inc. v. Carlson*, 835 S.W.2d 551, 554 (Mo. App. E.D. 1992) (similarly holding).

S.W.3d at 10. "However, we disregard conclusory allegations that are not supported by the facts." *Id*.

**B.      Point One**

In point one, CIBC argues the trial court erred in dismissing Count I of its petition for failure to state a claim. In Count I, CIBC asserted Williams breached the terms of the Williams Agreement, which CIBC argues was a binding contract between CIBC and Williams.

**1.      Specific Factual Allegations Asserted in Count I of the Petition**

With respect to Count I, CIBC pleaded the following facts. Williams and CIBC entered into the Williams Agreement, a valid and enforceable contract. The Agreement stated that Williams "agree[d] to the obligations set forth" in the contract in connection with his offer of employment with CIBC. The Agreement contained contractual provisions that, *inter alia*, prohibited Williams from "directly or indirectly . . . solicit[ing] or induc[ing], or attempt[ing] to solicit or induce, any client or customer of [CIBC] not to do business with [CIBC]" during the course of Williams' employment with CIBC and for a twelve-month period after the last day of his employment with CIBC. Furthermore, the Agreement stated Williams could not "hire any employee of [CIBC] or solicit, induce, or attempt to solicit or induce, any employee of [CIBC] to terminate his/her employment with [CIBC] or to be employed by any other person or persons."

The Williams Agreement also stated that, "by virtue of [Williams'] employment with [CIBC]," Williams would "learn or develop [c]onfidential [i]nformation." Therefore, Williams "agree[d] not to use any [c]onfidential [i]nformation except in furtherance of his[ ] duties for [CIBC], nor to disclose any [c]onfidential [i]nformation except to officers or other [e]mployees of [CIBC] when [ ] necessary, in the ordinary course of business, to do so." The Agreement defined confidential information as "trade secrets, financial information and other proprietary information concerning the products, processes, services or business of [CIBC] or of any clients or prospective

5

clients . . . which is useful or of value to [CIBC's] current or anticipated business activities or of those of any client of [CIBC]."

In paragraph 107 of CIBC's petition, CIBC alleged that Williams breached the Williams Agreement by:

(a) soliciting, inducing, or attempting to solicit or induce, Employee #1 to terminate his employment with CIBC or to be employed by Vista;

(b) soliciting, inducing, or attempting to solicit or induce, Landzaat to terminate his employment with CIBC or to be employed by Vista;

(c) soliciting, inducing, or attempting to solicit or induce, Sorensen [former Associate Managing Director of CIBC] to terminate his employment with CIBC or to be employed by Vista;

(d) hiring Landzaat to work for Vista;

(e) soliciting, inducing, or attempting to solicit or induce CIBC customers not to do business with CIBC;

(f) emailing [c]onfidential [i]nformation regarding CIBC customers to his personal email address;

(g) using, without authorization, [c]onfidential [i]nformation regarding CIBC employees (such as the identity of other employees, their responsibilities, competence, abilities and compensation) to assist with determining which employees to solicit to terminate their employment with CIBC, or to be employed by Vista; and

(h) using, without authorization, [c]onfidential [i]nformation regarding CIBC customers (such as current and prospective customer lists and information on customers and their employees; customer financial statements, investment objectives, the nature of their investment portfolios and contractual agreements with CIBC, [and] other personal customer information) to assist with determining which customers to solicit, who should solicit them, and how best to solicit them, to not do business with CIBC.

With respect to its claim that Williams solicited, induced, or attempted to solicit or induce CIBC customers not to do business with CIBC, CIBC specifically alleged, (1) "Williams and Landzaat made several in-person and remote pitches to Customer A to transfer assets to Vista and not do business with CIBC"; (2) "[o]n February 9, 2021, Williams traveled alone to Minnesota

6

and met with a CIBC family customer . . . [and] used this meeting with Customer C to solicit them to transfer assets to Vista and not do business with CIBC"; and (3) immediately after his resignation, Williams took Customer D to dinner at Olive and Oak restaurant in Webster Groves and "asked Customer D to transfer assets to Vista and not do business with CIBC."

With respect to its claim that Williams "email[ed] [c]onfidential [i]nformation regarding CIBC customers to his personal email address," CIBC specifically pleaded that Employee #1 sent an email that attached a lengthy, detailed, and confidential customer portfolio for Customer A and Customer B to Williams' CIBC email address. Subsequently, Williams allegedly "emailed the entire attachment to his personal email address in direct violation of CIBC policy."

Finally, CIBC pleaded that it suffered damages as a result of Williams' breach of the Agreement including, *inter alia*, "lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC as a result of Williams (directly or indirectly) soliciting customers to transfer assets to Vista and not do business with CIBC," and "the total compensation CIBC paid to Williams . . . during the periods of his employment with CIBC when he was breaching the Williams Agreement." More specifically, and as stated above, CIBC asserted it lost more than $76 million in assets and $25 million in outstanding loans because of Williams' alleged actions.

### 2. Analysis of Point One

In order to sufficiently state a claim for breach of contract, a plaintiff must plead the following elements: "(1) the existence and terms of a contract including certain rights and obligations between the parties; (2) the defendant breached his obligation under the contract; and (3) the plaintiff suffered damages from the breach." *Reddick v. Spring Lake Estates Homeowner's Association*, 648 S.W.3d 765, 782 (Mo. App. E.D. 2022).

Here, CIBC alleged in Count I that, (1) a contract existed between CIBC and Williams, i.e., the Williams Agreement; (2) the Williams Agreement prohibited Williams from, *inter alia*, soliciting, inducing, or attempting to solicit or induce customers not to do business with CIBC, hiring any employee of CIBC, and from disclosing confidential information; (3) Williams breached the contract in several, specific ways which CIBC outlined primarily in paragraph 107 of its petition; and (4) CIBC suffered various types of damages, most notably lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC as a result of Williams' alleged actions.

Defendants primarily argue the Williams Agreement should be narrowly construed and the mere allegation Williams and Landzaat "pitched" customers to transfer assets to Vista or otherwise reduce the amount of their assets managed by CIBC is insufficient to state a claim. In Defendants' view, this activity is distinguishable from a solicitation "not to do business with CIBC," and is not prohibited by the plain language of the Williams Agreement. However, under our standard of review, a reasonable inference from CIBC's allegations that Williams "pitched" customers to transfer assets to Vista, or otherwise reduce the amount of their assets managed by CIBC, was in effect the same as soliciting a CIBC customer not to do business with CIBC. *See Smith*, 644 S.W.3d at 10 (providing this Court must view all reasonable inferences in the petition in favor of the plaintiffs).

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold CIBC sufficiently alleged facts that, if true, meet the elements of a breach of contract claim against Williams. *See id*.; *see also Reddick*, 648 S.W.3d at 782. Accordingly, Count I of CIBC's petition adequately stated a claim upon which relief can be granted and the trial court erred in dismissing Count I. *See id*. Point one is granted.

8

**C.      Point Two**

In point two, CIBC argues the trial court erred in dismissing Count II of its petition for failure to state a claim.  In Count II, CIBC alleged Williams and Landzaat breached their fiduciary duties.

**1.      Specific Factual Allegations Asserted in Count II of the Petition**

With respect to Count II, CIBC pleaded the following facts.  Williams and Landzaat were "officers of CIBC" who had certain "authority and responsibilities" and who were entrusted with confidential information.  Accordingly, "[a] fiduciary duty [allegedly] existed between CIBC and [Williams and Landzaat]."  Because of this claimed fiduciary duty, Williams and Landzaat were allegedly required to "act with honesty and integrity in all business affairs, avoid conflicts of interest, safeguard customer and business information, and protect CIBC's assets."

In its petition, CIBC also alleged that Williams and Landzaat:

breached their fiduciary duties owed to CIBC by, among other activities, acting dishonestly in their business affairs with CIBC, engaging in conflicts of interest, competing with CIBC during their employment with CIBC, using [c]onfidential [i]nformation without authorization (including Williams sending it to his personal email address), and actively interfering with CIBC's relationships with its customers and employees.

[ ] More specifically, [Williams and Landzaat] operated businesses, (i.e., Vista and BCCDP) in competition with CIBC during their employment with CIBC . . . all while being paid by CIBC to provide services to CIBC and its customers.

Finally, CIBC asserted that Williams' and Landzaat's alleged actions "caused damages to CIBC's business" including, *inter alia*, "lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC," and "the total compensation paid to Williams and Landzaat . . . during the periods of their employment with CIBC when they were competing with CIBC."

9

## 2. Analysis of Point Two

To sufficiently state a claim for breach of a fiduciary duty, a plaintiff must plead that, "(1) a fiduciary duty existed between the parties; (2) the defendant breached the duty; and (3) the breach caused the plaintiff to suffer harm." *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 86 (Mo. App. E.D. 2012). "Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. banc 2012).

Here, CIBC alleged in Count II that Williams and Landzaat were officers of CIBC. "The officers . . . of a corporation occupy a fiduciary relationship to the corporation and . . . are bound to act with fidelity and to subordinate their personal interest to the interest of the company." *Robinson v. Langenbach*, 439 S.W.3d 853, 860 (Mo. App. E.D. 2014). Accordingly, CIBC sufficiently alleged that a fiduciary duty existed between Williams and CIBC and between Landzaat and CIBC.

CIBC also alleged that Williams and Landzaat breached their fiduciary duties by, *inter alia*, "competing with CIBC during their employment with CIBC." *See Zakibe v. Aherns & McCarron, Inc.*, 28 S.W.3d 373, 383 (Mo. App. E.D. 2000) ("an officer . . . may breach a fiduciary duty by engaging in undisclosed transactions with another company in which he has an interest which are not fair to the corporation"); *see also Western Blue Print*, 367 S.W.3d at 15 (holding whether a defendant breached his or her fiduciary duty is for a trier of fact to decide).

Finally, CIBC alleged that Williams' and Landzaat's breach of their fiduciary duties caused them to suffer harm, including namely, "lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC," and "the total compensation paid to Williams and Landzaat . . . during the periods of their employment with CIBC when they were competing with CIBC."

10

To this point, Defendants argue CIBC did not sufficiently plead that Williams and Landzaat were "officers" of CIBC and cite *Western Blue Print*, 367 S.W.3d 7, as support of this contention. We disagree, and we find *Western Blue Print* is distinguishable. First, we note the significant difference of procedural posture between *Western Plue Brint* and the instant case. Unlike this case, the Missouri Supreme Court in *Western Blue Print* was tasked with reviewing the denial of a motion for judgment notwithstanding the verdict, and, therefore, had a substantially more developed set of facts to consider in its review. *See id*. at 12-14. Second, in *Western Blue Print*, the plaintiff did not directly argue that the defendant was an officer of the company, as CIBC did here, but rather that the defendant was a "de facto officer." *Id*. at 15. Further, the Court in *Western Blue Print* held the plaintiff did not owe a fiduciary duty to her employer in part because she "was not restricted by a non-compete agreement, and she was not asked to maintain the alleged confidential nature of the information she obtained through her work at Western Blue." *Id*. at 16. Here, in addition to directly alleging that Williams and Landzaat were officers of CIBC, CIBC alleged the Williams Agreement, (1) restricted Williams via a non-compete provision; and (2) prohibited Williams from disclosing confidential information he obtained through his work at CIBC. Although CIBC did not allege Landzaat was bound by his own restrictive covenant similar to the Williams Agreement, CIBC did plead Landzaat was bound by the CIBC Code of Conduct which demanded that he, *inter alia*, "avoid conflicts of interest," "safeguard customer and business information," and "protect CIBC's assets."

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold CIBC sufficiently alleged facts that, if true, meet the elements of a breach of fiduciary duty claim against Williams and Landzaat. *See Smith*, 644 S.W.3d at 10; *see also Dibrill*, 383 S.W.3d at 86. Accordingly, Count II of CIBC's

11

petition adequately stated a claim upon which relief can be granted and the trial court erred in dismissing Count II.  *See id.*  Point two is granted.

**D.      Point Three**

In point three, CIBC argues the trial court erred in dismissing Count III of its petition for failure to state a claim.  In Count III, CIBC claimed Williams and Landzaat breached their duties of loyalty.

**1.      Specific Factual Allegations Asserted in Count III of the Petition**

With respect to Count III, CIBC pleaded the following facts.  Williams and Landzaat, as employees of CIBC, owed CIBC a duty of loyalty during their employment.  CIBC also asserted Williams and Landzaat "actually engaged in direct competition (and conflicts of interest) with CIBC during their employment with CIBC."  Specifically, Williams and Landzaat allegedly:

> competed with CIBC prior to resigning their employment with CIBC by operating businesses (i.e., Vista and BCCDP) in competition with CIBC . . . using [c]onfidential [i]nformation peculiar to CIBC's business without authorization . . . [and] soliciting CIBC customers to transfer assets to Vista and not to do business with CIBC . . . . [These] actions . . . were all contrary to the interests of CIBC.

Furthermore, CIBC alleged that during spring 2019, while employed with CIBC, Williams and Landzaat "were actively seeking to acquire a bank" as part of Project Vista and met and negotiated with several banks in connection with those efforts.

Additionally, CIBC claimed Williams' and Landzaat's actions caused damages including, *inter alia*, "lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC," and "the total compensation paid to Williams and Landzaat . . . during the periods of their employment with CIBC when they were competing with CIBC."

12

## 2. Analysis of Point Three

To sufficiently state a claim for breach of a duty of loyalty, a plaintiff must plead the following: (1) that the employee, while employed, acted contrary to the employer's interests; and (2) that the employee, while still employed, went beyond mere planning and preparation and acted in direct competition with the employer. *See Scanwell Freight Express STL, Inc. v. Chan*, 162 S.W.3d 477, 481 (Mo. banc 2005).

Here, CIBC alleged in Count III that Williams and Landzaat, while employed, acted contrary to CIBC's interests by, *inter alia*, operating businesses in competition with CIBC. The alleged actions went beyond mere planning and preparation. Specifically, CIBC alleged that Williams and Landzaat actually formed competing corporations and actively solicited clients to transfer assets to Vista and not to do business with CIBC. Finally, CIBC alleged it suffered damages due to Williams' and Landzaat's alleged actions.

With respect to Count III, Defendants argue, (1) the allegations against Landzaat are conclusory and boilerplate; and (2) the allegation that Williams formed Vista "does not equate to Vista directly competing with CIBC." At this stage of the proceedings where we are tasked only with evaluating the adequacy of CIBC's petition, we find these arguments unpersuasive. First, CIBC alleged many detailed and specific facts that Landzaat competed with CIBC which are not simply "conclusory" or "boilerplate." For example, CIBC alleged that Landzaat, along with Williams, participated in the efforts to purchase a bank as part of the formation of what would become Vista. Secondly, and as discussed in Section II.B. of this opinion, CIBC alleged Williams met with CIBC customers and solicited them to transfer assets to Vista and not to do business with CIBC. The allegations regarding the formation of Vista, as pleaded, are sufficient to constitute direct competition with CIBC for this cause of action. *See id*. at 479 (defining "direct competition" as "to gain advantage over a competitor").

13

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold CIBC sufficiently alleged facts that, if true, meet the elements of a breach of duty of loyalty claim against Williams and Landzaat. *See Smith*, 644 S.W.3d at 10; *see also Scanwell*, 162 S.W.3d at 481. Accordingly, Count III of CIBC's petition adequately stated a claim upon which relief can be granted and the trial court erred in dismissing Count III. *See id.* Point three is granted.

## E. Point Four

In point four, CIBC argues the trial court erred in dismissing Count IV of its petition for failure to state a claim specifically with respect to defendants Williams and Landzaat. In Count IV, CIBC contended Williams and Landzaat tortiously interfered with its business expectancy.[5]

### 1. Specific Factual Allegations Regarding Williams and Landzaat Asserted in Count IV of the Petition

With respect to Count IV, CIBC pleaded the following facts. Approximately twenty-eight accounts transferred assets from CIBC to Vista after Williams and Landzaat resigned from CIBC. CIBC also claimed the majority of the customer accounts which transferred assets from CIBC to Vista had been with CIBC for more than four years. In fact, CIBC alleged that multiple of the accounts which transferred assets from CIBC to Vista had been with CIBC for almost nine years. Williams and Landzaat also allegedly knew of CIBC's business relationship with the customers at issue because Williams and Landzaat worked with each of the customers during their employment with CIBC. Additionally, Williams and Landzaat allegedly knowingly and intentionally interfered with CIBC's relationships with the customers at issue by asking them to transfer assets to Vista and not to do business with CIBC. These alleged actions altered and disrupted CIBC's

_____

[5] In Count IV, CIBC also asserted Vista and BCCDP tortiously interfered with its business expectancy. The allegations in Count IV that relate to Vista and BCCDP are discussed below in Section II.H. of this opinion.

relationships with these customers, and the interference was done without justification or excuse. CIBC also asserted it was reasonable for CIBC to expect the business relationships between the customers at issue and CIBC would have continued but for Williams' and Landzaat's alleged interference with its customers.

Finally, CIBC alleged it suffered damages from Williams' and Landzaat's actions including, *inter alia*, "lost revenues and profits relating to customers who reduced their business or ceased doing business with CIBC."

### 2.      Analysis of Point Four

"The elements of a tortious interference with a business expectancy cause of action are: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the defendant's conduct." *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 598 (Mo. App. E.D. 2000). In order to plead a valid business expectancy, "it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged." *Rail Switching Services, Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 260 (Mo. App. E.D. 2017) (citation omitted). "Missouri courts have recognized that a regular course of prior dealings suggests a valid business expectancy." *Western Blue Print*, 367 S.W.3d at 19.

Here, CIBC asserted that it had a valid expectancy due to its regular course of prior dealings with the clients who transferred assets from CIBC to Vista. *See id*. CIBC also asserted Williams and Landzaat had knowledge of the business relationships between CIBC and the clients because they worked with the clients at CIBC; Williams and Landzaat intentionally interfered with the relationships by soliciting clients to transfer assets from CIBC to Vista; Williams' and Landzaat's conduct was not justified; and CIBC suffered damages as a result of their conduct.

15

With respect to Count IV, Defendants attack the fourth element of a tortious interference with a business expectancy claim and primarily argue that CIBC has not sufficiently pleaded that Williams and Landzaat lacked justification to interfere in CIBC's business expectancy. We disagree. "Justification for interfering with another's business expectancy exists when one undertakes to protect a valid economic interest." *Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d, 691, 702-03 (Mo. App. S.D. 2005) (citations omitted). However, a party is not justified in interfering with a business expectancy and protecting his or her economic interest if he or she "employs improper means to protect that interest. Improper means are those which are independently wrongful notwithstanding injury caused by the interference." *Id*. at 703 (citations and internal citation omitted). CIBC claimed in its petition that Williams' and Landzaat's interference was "done without justification or excuse, as the interference was done in violation of the Williams Agreement, [Williams' and Landzaat's] fiduciary duties and duties of loyalty to CIBC, and/or CIBC's written policies." In other words, CIBC sufficiently pleaded Williams' and Landzaat's alleged actions were "independently wrongful," and, therefore, lacked justification. *See id*.

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold CIBC sufficiently alleged facts that, if true, meet the elements of a tortious interference with a business expectancy claim against defendants Williams and Landzaat. *See Smith*, 644 S.W.3d at 10; *see also Weicht*, 32 S.W.3d at 598. Accordingly, Count IV of CIBC's petition adequately stated a claim upon which relief can be granted with respect to defendants Williams and Landzaat and the trial court erred in dismissing Count IV as to these two defendants. *See id*. Point four is granted.

16

**F.      Point Five**

In point five, CIBC argues the trial court erred in dismissing Count V of its petition for failure to state a claim specifically with respect to defendants Williams and Landzaat. In Count V, CIBC maintained Williams and Landzaat were unjustly enriched financially.[6]

**1.      Specific Factual Allegations Regarding Williams and Landzaat Asserted in Count V of the Petition**

With respect to Count V, CIBC pleaded the following facts. Williams and Landzaat were enriched financially by, (1) CIBC customers transferring assets to Vista; (2) Landzaat leaving CIBC and joining Vista; and (3) competing with CIBC while still employed by CIBC. CIBC also alleged the financial enrichment came at the expense of CIBC and would not have occurred but for Williams' and Landzaat's wrongful actions. CIBC claimed it would be inequitable under the circumstances for Williams and Landzaat to retain the financial benefits they received as a result of "Williams['] breach of contract (including the solicitation of CIBC's customers and employees), . . . [Williams and Landzaat] competing with CIBC during their employment with CIBC, and breaches of the duties [Williams and Landzaat] owed to CIBC." Finally, CIBC alleged Williams' and Landzaat's actions were done willfully, recklessly, and "in wanton disregard of the rights (and policies) of CIBC."

**2.      Analysis of Point Five**

In order to state a claim for unjust enrichment, a plaintiff must plead the following elements: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit." *Sparks v. PNC Bank*, 400 S.W.3d 454, 460 (Mo. App. E.D. 2013). "In determining

---

[6] In Count V, CIBC also claimed Vista and BCCDP were unjustly enriched financially. The allegations in Count V that relate to Vista and BCCDP are discussed below in Section II.H. of this opinion.

17

whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage." *S&J, Inc. v. McLoud & Co., LLC*, 108 S.W.3d 765, 768 (Mo. App. S.D. 2003).

Here, CIBC pleaded Williams and Landzaat were financially enriched by competing with CIBC while still employed with CIBC. In other words, CIBC pleaded Williams and Landzaat received benefits at CIBC's expense. Finally, CIBC pleaded it would be unjust for Williams and Landzaat to retain the benefits because they were gained as a result of Williams' and Landzaat's wrongful actions, namely Williams' violations of the Williams Agreement and both individuals' breaches of their duties owed to CIBC. *See id.*

In this point, Defendants argue any allegation Williams and Landzaat received a benefit from competing with CIBC is conclusory because CIBC's petition "wholly fails to plead ultimate facts that [Williams and Landzaat] went beyond mere planning in its allegations regarding the formation of Vista." As previously held in Section II.D. of this opinion, CIBC sufficiently pleaded specific facts that Williams' and Landzaat's alleged actions went beyond mere planning and preparation and constituted direct competition with CIBC. Therefore, this argument is without merit.

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold that CIBC sufficiently alleged facts that, if true, meet the elements of an unjust enrichment claim against defendants Williams and Landzaat. *See Smith*, 644 S.W.3d at 10; *see also Sparks*, 400 S.W.3d at 460; *S&J*, 108 S.W.3d at 768. Accordingly, Count V of the petition adequately stated a claim upon which relief can be granted with respect to defendants Williams and Landzaat and the trial court erred in dismissing Count V as to these two defendants. *See id.* Point five is granted.

18

**G.      Point Six**

In point six, CIBC argues the trial court erred in dismissing Count VI of its petition for failure to state a claim.  In Count VI, CIBC requested that the trial court provide injunctive relief against Williams.

**1.      Specific Factual Allegations Asserted in Count VI of the Petition**

With respect to Count VI, CIBC pleaded the following.  Williams allegedly violated the Williams Agreement.  At the time the petition was filed, the violations were allegedly causing irreparable harm to CIBC, including "the loss of intangible assets such as reputation and goodwill."  CIBC claimed "[t]here is no adequate remedy at law to protect CIBC from the loss of its customers, [c]onfidential [i]nformation, employees, and goodwill, as pecuniary remedies fail to provide adequate reimbursement to compensate CIBC for the injury or threatened injury of these assets."  CIBC also asserted the damages to CIBC's customer base and goodwill through Williams' improper solicitation and use of confidential information is difficult to quantify monetarily.

Additionally, CIBC claimed in its petition that Williams has continued to solicit or induce, or attempt to solicit or induce, CIBC customers to transfer their assets to Vista and not to do business with CIBC since his resignation.  Additionally, CIBC alleged the restrictive covenant in the Williams Agreement was fair and reasonable in length and scope and that CIBC had a likelihood of success on the merits of the claims asserted in its petition upon which injunctive relief is available.

Furthermore, and as stated above, CIBC pleaded Williams was contractually bound by the terms of the Williams Agreement and that the Agreement forbade Williams from competing with CIBC during his employment and for a period of twelve months after his resignation.  Paragraph 6.2 of the Williams Agreement states:

. . . [Williams] agrees that, in addition to any other remedies at law or in equity available to [CIBC] for [Williams'] breach or threatened breach of this Agreement, [CIBC] is entitled to specific performance or injunctive relief against [Williams] to prevent such damage or breach . . .. [I]n the event of a breach or a violation of any of the covenants or provisions in Sections 1 through 5 [of the Agreement, which include, *inter alia*, the non-compete and non-disclosure provisions], . . . the period of restriction set forth in such provision subject to such breach shall be extended by the period of such breach.

Accordingly, in its petition CIBC requested that the trial court:

. . . enjoin Williams for twelve months (and for an additional tolling period) from directly or indirectly: (i) soliciting . . . any customer . . . not to do business with CIBC; or (ii) hiring any employee of CIBC . . .; or (iii) soliciting . . . any vendor, supplier, consultant or agent doing business with CIBC to terminate or to reduce their business relationship with CIBC.

## 2. Analysis of Point Six

To sufficiently state a claim for a permanent injunction, a party must plead: "1) [there is] no adequate remedy at law; and 2) irreparable harm will result if the injunction is not awarded." *Suppes v. Curators of University of Missouri*, 613 S.W.3d 836, 847 (Mo. App. W.D. 2020).

"Generally, the phrase adequate remedy at law means that damages will not adequately compensate the plaintiff for the injury or threatened injury." *Glenn v. City of Grant City*, 69 S.W.3d 126, 130 (Mo. App. W.D. 2002) (citation and internal quotations omitted). "Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct." *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. App. E.D. 2015) (citation omitted).

Here, CIBC pleaded that it does not have an adequate remedy at law because pecuniary remedies fail to provide adequate reimbursement to CIBC for the loss of its customers, confidential information, employees, and goodwill. Additionally, CIBC alleged that it is difficult to monetarily quantify the damages from Williams' solicitation of its customers and misuse of

20

confidential information. Further, CIBC alleged that without an injunction, it would suffer irreparable harm in the form of its damaged reputation and loss of goodwill.

Defendants argue Count VI is now moot because it has now been more than twelve months since Williams resigned from CIBC. We disagree. CIBC has adequately pleaded that the tolling provision of the Williams Agreement has been triggered by Williams' alleged continued breach of the Agreement and, accordingly, the time limit described in the Agreement is extended.

Based on the foregoing, and because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, we hold that CIBC sufficiently alleged facts that, if true, entitle CIBC to injunctive relief against Williams. *See Smith*, 644 S.W.3d at 10; *see also Suppes*, 613 S.W.3d at 847.

Accordingly, Count VI of the petition adequately stated a claim upon which relief can be granted and the trial court erred in dismissing Count VI. *See id*. Point six is granted.

## H.    Point Seven

In point seven, CIBC argues the trial court erred in dismissing Counts IV and V of its petition for failure to state a claim specifically with respect to defendants Vista and BCCDP. Count IV contended Vista and BCCDP tortiously interfered with its business expectancy. Count V maintained Vista and BCCDP were unjustly enriched financially.

### 1.    Specific Factual Allegations Regarding Vista and BCCDP Asserted in Counts IV and V of the Petition

The majority of the specific facts with respect to Counts IV and V have been laid out in Sections II.E.1. and II.F.1. of this opinion. However, specifically with respect to defendants Vista and BCCDP, CIBC also pleaded the following. In Count IV, CIBC alleged "Vista and BCCDP, through their owners (i.e., [Williams or Landzaat]), knew of CIBC's business relationships with the CIBC customers at issue, as Williams and Landzaat worked with each of the customers during

21

their employment with CIBC." In Count V, CIBC asserted, "it would be inequitable for Vista and/or BCCDP to retain the financial benefits secured through their owners as a result of the wrongdoing described [in the petition]." As stated above, we hold, (1) CIBC sufficiently stated a claim in Count IV that Williams and Landzaat tortiously interfered with its business expectancy; and (2) CIBC sufficiently stated a claim in Count V that Williams and Landzaat were unjustly enriched financially.

### 2. Analysis of Point Seven

"Where an agency relationship exists, the wrongful acts of an agent can generally be imputed to the principal." *Price v. Thompson*, 616 S.W.3d 301, 309 (Mo. App. W.D. 2020). "Likewise, where an employer-employee relationship exists, the doctrine of *respondeat superior* holds that the employer is vicariously liable for the injury-causing conduct of an employee done within the course and scope of the employment." *Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC*, 422 S.W.3d 312, 323 (Mo. banc 2014) (emphasis in original).

On appeal, CIBC argues Williams' and Landzaat's individual actions can be imputed to Vista and BCCDP via vicarious liability. Based on the allegations in the petition and viewing all reasonable inferences therefrom in favor of CIBC, as we must, we agree. *See Smith*, 644 S.W.3d at 10. With respect to Count IV, CIBC sufficiently pleaded that Williams and Landzaat, as owners/employees of Vista and BCCDP,[7] are agents and employees of Vista and BCCDP. Accordingly, because we hold CIBC sufficiently stated a claim in Count IV that Williams and Landzaat tortiously interfered with its business expectancy, CIBC also sufficiently stated a claim

---

[7] CIBC's petition does not directly allege that Williams and Landzaat are owners/employees of BCCDP in the same manner it directly alleges they are owners/employees of Vista. However, the petition does allege that Williams created BCCDP and that both Williams and Landzaat conducted business on behalf of BCCDP such as negotiating the terms of potential acquisitions of several banks by BCCDP. Because we view all reasonable inferences from the allegations in CIBC's petition in favor of CIBC, *see Smith*, 644 S.W.3d at 10, we hold CIBC sufficiently alleged that Williams and Landzaat were owners/employees of BCCDP.

22

that Vista and BCCDP are likewise allegedly liable for Williams' and Landzaat's injury-causing conduct under agency principles or the doctrine of *respondeat superior*. *See id.*; *Price*, 616 S.W.3d at 309; *see also Weicht*, 32 S.W.3d at 598. Similarly, with respect to Count V, CIBC sufficiently pleaded that, because of agents/owners Williams' and Landzaat's alleged injury-causing and wrongful conduct, (1) Vista and BCCDP were enriched by the receipt of a benefit; (2) that enrichment was at the expense of CIBC; and (3) it would be unjust to allow Vista and BCCDP to retain these benefits. *See Central Trust*, 422 S.W.3d at 323; *Price*, 616 S.W.3d at 309; *see also Sparks*, 400 S.W.3d at 460; *S&J*, 108 S.W.3d at 768.

Based on the foregoing, we hold Counts IV and V of CIBC's petition alleging tortious interference with a business expectancy and unjust enrichment, respectively, which we previously held are sufficient to state a claim with respect to defendants Williams and Landzaat, are also sufficient to state claims against defendants Vista and BCCDP and the trial court erred in dismissing Counts IV and V as to these two defendants. *See Smith*, 644 S.W.3d at 10. Point seven is granted.

### III.    CONCLUSION

Because we hold CIBC's petition sufficiently alleged claims in Counts I-VI, we reverse the trial court's judgment dismissing each of those counts and we remand for further proceedings consistent with this opinion.[8]

_____
ROBERT M. CLAYTON III, Judge

Angela T. Quigless, P.J., and
Sherri B. Sullivan, J., concur.

---

[8] As previously stated, we note there may be facts developed and considered on a motion for summary judgment or at trial that foreclose CIBC relief on some or all of it counts. *See Mental Health Associates*, 835 S.W.2d at 554 (similarly holding).

23